# Lehman, Durr & Co. *v.* Warner.

## *Garnishment.*

1. *Misnomer; when not available.*—Misnomer of a party, if not pleaded, is waived, and when it is necessary to plead the judgment, the real party may connect himself with it, by averment of his proper name,—a garnishee can not abate the proceeding against him for want of correspondence between the name of the plaintiff in the garnishment and in the judgment.

2. *Stockholder; when can not withdraw subscription, or deny corporate existence.*—A subscriber to the capital stock of a bank incorporated by act of the legislature, (which makes the stock a fund pledged for the security of depositors,) upon condition that certain amendments shall be procured from the legislature, and who does not participate actively in an organization then made by the subscribers, with a view to the more easy attainment of the desired amendment, but after the failure to obtain it, pays up a portion of the subscription taking a receipt purporting to be the act of the bank, and signed by the cashier, for so much paid on the subscription, and makes no objection to the subsequent carrying on of business by the bank, though it was done with his knowledge, must be regarded as yielding assent to the provisions of the charter, and acquiescing in the organization, and can not withdraw such assent, to the prejudice of a depositor whose rights had already attached, nor to the prejudice of the corporation through whom the right may be enforced, after judgment, by garnishment; and besides having dealt and contracted with the corporation as such, such subscriber is estopped to deny its corporate existence.

3. *Usurpation of franchise; who can not complain of.*—Whenever there is a legislative grant, under which corporate existence and power claimed could be rightly exercised, no private individual can intervene in a collateral proceeding to complain of a breach of the conditions of the grant, or a usurpation of such franchises. The State which alone can create, may waive the breach or acquiesce in the usurpation, and the wrong being to the State, and not to the individuals, so long as the State remains inactive, the individual must also acquiesce.

4. *Same.*—The failure of a corporation to organize for more than two

years after its incorporation, or to procure and have paid up the minimum amount of capital stock prescribed, before it was authorized to exercise corporate powers, is a wrong to the State, in which it may acquiesce or which it may waive, and the State remaining inactive, a private individual can not complain; and the corporation itself incurs all its liabilities and is estopped from denying them. (*Per* BRICKELL, C. J.; STONE, J., *not sitting, and* MANNING, J., *expressing no opinion on points decided in third and fourth head-notes.*)

APPEAL from Montgomery City Court.

Tried before Hon. JOHN A. MINNIS.

This was a garnishment sued out by the appellee, Mrs. Margaret *Warner*, against the appellants, Lehman, Durr & Co., as stockholders of "The Alabama Savings Bank of Montgomery," against which the appellee, in the name of Margaret *Warren*, had, at the July term, 1875, of the City Court of Montgomery, recovered judgment, on which execution had been duly returned, "no property."

The affidavit made for garnishment commences as follows:

"State of Alabama, Montgomery county. Personally appeared before, E. H. Metcalf, clerk of the City Court of Montgomery, John W. Watts, attorney for Margaret Warren *alias* Warner, who having been duly sworn, deposes that he was and is one of the attorneys for the plaintiff, in the case in said City Court of Margaret Warren in the body of the writ, and Margaret Warner on the back of said summons, against the Alabama Savings Bank of Montgomery," &c.

The affidavit then states that in the suit above mentioned, the plaintiff recovered a judgment; that execution was regularly issued thereon, and returned "no property," and that Messrs. Lehman, Durr & Co., a firm composed of persons whose names are stated, are supposed and believed by affiant, to be indebted to said defendant, as stockholders of said defendant or otherwise, or to have effects of said defendant in their hands, and that affiant believes that process of garnishment against said firm is necessary to obtain satisfaction of said judgment, &c.

The writ of garnishment recites that John W. Watts has made affidavit, as required by law, that Margaret Warren *alias* Warner, at the July term, 1875, of the City Court of Montgomery, recovered a judgment against the Alabama Savings Bank of Montgomery, &c., and proceeds in the regular form to summon the appellants to answer.

The appellants, having craved oyer of the affidavit and writ of garnishment, prayed that the writ be quashed, and in support thereof pleaded as follows:

VOL. LXI.

" 1. It does not appear in said affidavit, by whom the judgment therein mentioned was recovered; whether by Margaret Warren or Margaret Warner.

" 2. It appears from said affidavit that the suit in which judgment was rendered, was brought in the name of Margaret Warner and not in the name of Margaret Warren *alias* Warner.

" 3. It does not appear in said affidavit, that any judgment was recovered in the name of Margaret Warner or in the name of Margaret Warren *alias* Warner.

" 4. It does not appear in said affidavit that the suit, in which judgment was rendered, was brought in the name of Margaret Warner or in the name of Margaret Warren *alias* Warner, and that the writ in this cause is in the name of Margaret Warren *alias* Warner as plaintiff."

The appellee demurred, on the ground that it was no answer to the writ of garnishment, and set up no facts which excused a failure to answer. The court sustained the demurrer and required the appellants to answer, and by agreement the following state of facts was taken as their answer:

" During the session of the legislature of 1872–3, many persons desired to organize the Alabama Savings Bank of Montgomery, under the act of February 12th, 1867, and of the act of December 12th, 1864, provided an amendment to the charter could pass the legislature. This amendment related to the form and character of the certificates of deposit, which might be issued by the company, and which was believed to be material to the success of the company. The appellants, by J. W. Durr, one of their firm, agreed in writing to subscribe for twenty-five shares of one hundred dollars each, of the stock of said bank, and was then told by the person who solicited the subscription, that they would never be called on for but ten per cent. of the subscription. After this agreement to subscribe was signed by others, it was believed that they would be more likely to get the amendment passed, if there was an organization; and with this view a meeting of all who had signed the agreement, and of those who had subscribed unconditionally, was called. None of the firm of Lehman, Durr & Co., were present at this meeting. Directors were then elected, who chose John H. Gindrat, president, and E. H. Metcalf, secretary. At this meeting no call was made for payments of subscriptions to stock, and this was the only meeting of stockholders ever held.

The legislature adjourned without passing the amendment,

and after this Mr. Metcalf called on the appellants, and J. W. Durr, a member of their firm, "directed their clerk to pay Mr. Metcalf two hundred and fifty dollars and take receipt." The following is a copy of the receipt taken:

"Alabama Savings Bank of Montgomery, Ala., May 21st, 1873. Received of Messrs. Lehman, Durr & Co., two hundred and fifty dollars, being ten per cent. of their stock in this bank. E. H. METCALF, Cashier."

Durr testified that he did not direct the form of the receipt, which was made out by Metcalf, and that he had never seen it, until he found it among the papers of the firm, after the garnishment was served on them. It was shown that the bank went into operation within two or three doors of appellants' place of business, some time in the early part of 1873, and failed a few months afterwards.

Lehman, Durr & Co. never paid anything else on their subscription, and had never been called on by the officers of the bank for more. The appellee deposited with E. H. Metcalf, as cashier of the Alabama Savings Bank of Montgomery, eight hundred and seventeen dollars, and upon his failure, on demand, to repay her, she brought suit against the bank, in the City Court of Montgomery, in the name of Margaret Warren alone, and obtained a judgment against the bank for the amount of her deposit and interest. The act of incorporation, under which the organization of the bank was claimed to have been effected, was approved December 12, 1864, and creates five persons, naming them, "and their associates and successors in office," a body corporate, under the name of the Alabama Savings Bank of Montgomery. By the second section of this act, the capital stock is fixed at one hundred thousand dollars, with the privilege of increasing it to five hundred thousand; and it is declared "said capital stock shall be a fund pledged for the security of the depositors." Section three of the act declares "that said corporation may go into operation so soon as their capital stock is paid in, and not before. There was an act amendatory of the charter, passed in February, 1867, but its provisions, so far as the questions raised by this record are concerned, are substantially the same as those of the act of incorporation, with the exceptions that the second section of the amending act relieves the stockholders of any personal liability for the debts of the corporation, over and above their stock; and the third section of the incorporating act is so amended, as to allow the bank to go into operation so

[Lehman, Durr & Co. v. Warner.]

soon as ten per cent. of its capital stock is paid in, and not before.

It was shown that there never had been $100,000 subscribed for stock in said bank, including the amounts agreed to be subscribed as above stated; and ten per cent. on the amount subscribed or agreed to be subscribed, had never been paid. E. H. Metcalf was the only one of the corporators named in said acts, who was present at said meeting. This was all the evidence, and the court rendered a judgment against the garnishees for the amount of the judgment recovered by the appellee against the bank, with interest to date. Motion was made by the appellants to set aside the judgment against them on the grounds: 1st, "that plaintiff has never recovered a judgment against the defendant in said cause;" 2d, "that these garnishees are not, and have not been indebted to said defendants; 3d, that the entry of judgment against these garnishees is a mistake." This motion was overruled. The appellants assign as error, the ruling on the demurrer to the pleas, the rendition of judgment against the garnishees, and the overruling of the motion to set aside the judgment.

HARRIS GUNTER, for appellants.—The demurrer to the pleas of the garnishees should not have been sustained. The judgment against the bank was rendered in favor of Margaret Warren, and the garnishment suit must be commenced and prosecuted in the name of the plaintiff in that judgment, no matter who may be its real owner.—*Jackson v. Shipman*, 28 Ala. 492. The objection is made and properly so, by plea in abatement.—*Curry v. Woodward*, 50 Ala. 259. A garnishment is not an equitable, but a legal remedy, and operates only on legal rights, such as the debtor could enforce by action at law.—1 Brick. Dig. 173–5, §§ 276, 313, 314. The plaintiff has no greater right against the garnishee, than the defendant had.—Drake on Attachment, §§ 458, 462. The appellants can make any defense, which would have availed them in a suit by the bank against them. There never was such a corporation as the Alabama Savings Bank of Montgomery, and if there was no such corporation, then appellants can not be made liable as stockholders. The act of December 12, 1864, and that of February 12, 1867, both expired by limitation long before any attempt to organize—and this by force of the statute now forming section 2025 (1773) of the Code of 1876. It is there provided that if any private corporation, hereafter cre-

ated by the General Assembly, or incorporated under any law, does not organize, and commence business within two years from the date of its incorporation, *its corporate powers cease*. There was no attempt to organize, until the winter of 1872–3, more than two years after the last act when the corporate powers conferred by these acts had ceased to exist. The alleged subscription is a contract with the corporation, upon the terms of the act creating it.—11 Ala. 450. Until there was a legal corporation to make the contract of subscription with, the contract conferred no rights and created no liabilities, unless it was ratified after *a legal organization.*— *Valk v. Crandall*, Sand. Ch. 179. There never was a legal organization, and the contract of subscription never became binding on any person. We may go further, and admit for the sake of argument, that the acts of 1864 and 1867 were still in force, and that a legal organization could be had under them. Still, there was no valid organization. The charter in each act is granted to five persons, naming them, and it was shown that only one of the corporators was present at the attempted organization. The grant must be acepted by a majority at least of those intended to be incorporated.— Ang. & Ames on Corp. (6 ed.) §§ 81, 84, 85. Again the original act required all the stock to be paid in, and the amendatory act required ten per cent. to be paid, as a condition precedent to the organization. It was clearly shown that neither statute was complied with, and for this reason there never was a legal organization. The cases cited by the appellee, to show that the appellants can not set up these matters, do not apply to a case like this, and apply only where there have been dealings with the corporation subsequent to its organization.—See *Valk v. Crandall*, 1 Sand. Ch. 179.

It is plain, we think, that when one is garnished as stockholder, he can show that he subscribed in good faith, and paid his ten per cent. as required by the charter; that the requisites of a legal organization were never complied with, and that after the illegal organization he never in any way sanctioned it, or estopped himself from denying its corporate existence. The subscriber by his subscription admits nothing more than the charter asserts; and if that contemplates some further act to be done, before a requisition may be made upon the subscribers for payments upon their stock, or before they are liable to suit, that act must be shown to have been done.—*Carlisle v. Cahaba & Marion R. R. Co.*, 4 Ala. 76.

WATTS & SONS, *contra.*—The matters set up in the pleas, were not such as could avail the garnishees. A garnishee can not question the ownership of the judgment against the defendant-debtor. — *Jackson v. Shipman,* 28 Ala. 488. Neither can he take any advantage of any irregularities or defects in the judgment, unless the judgment is void.—See 1 Brick. Dig. p. 182, § 405; *Curry v. Woodward,* 50 Ala. 259. The appellants can not set up in this action any irregularities in the organization of the bank. They waived all right to do so, and elected to treat the organization as legal and valid, when after the adjournment of the legislature, which was to pass the amendment, and after it was known to them that the amendment could not be obtained, they paid ten per cent. on their stock, and took a receipt which on its face shows that it was given by one who professed to have the right to give it, by virtue of that very organization they now seek to assail as illegal and invalid. This receipt shows that there was no condition to their subscription, and that if there was, it was waived.—*Lane v. Brainard,* 30 Conn. 565; *Graff v. P. & S. R. R. Co.,* 31 Pa. St. 489. This payment estops them from denying that they are stockholders.—*Maltby v. N. W. V. R. R. Co.,* 16 Md. 422. It is contended that the subscription was made after Durr had been told by Metcalf that he would never be called on for but ten per cent. of the amount subscribed. This remark did not bind the bank.—See *Smith v. P. R. Co.,* 30 Ala. 650. Such a condition would be directly inconsistent with and repugnant to the obligation to take twenty-five shares of $100 each. Such a condition would be void.—*Downie v. White,* 12 Wis. 176; *Blodgett v. Morrill,* 20 Vt. 509; Redf. on Railways, § 48, and note 1, and authorities there cited.

The requirement, in the acts of 1864 and 1867, as to the amount of stock to be paid in, was a condition subsequent—the first sections of the acts made the corporators a body politic and corporate without conditions, and no stockholder can avail himself of such failure, to avoid his obligation. Ang. & Ames on Corp. § 777; *Duke v. Cahaba Nav. Co.,* 17 Ala. 376; *Smith v. P. R. Co.,* 30 Ala. 650; *Sprowl v. Lawrence,* 33 Ala. 674. In this last case, it is laid down (after an elaborate discussion of the authorities), that it is an established principle, that until the forfeiture of a charter is judicially decreed, neither the forfeiture, nor the cause of it, can be inquired into in another suit; nor can the existence of the corporation be questioned, incidentally or collaterally. 2 Kent, 312, and cases cited; 13 La. 503; *Michles v. Roches-*

*ter Bank*, 11 Paige, 118; 5 Allen (Mass.) 446; *Smith v. O'Brien*, 9 Mass. 423; 41 Me. 512; 16 B. Monroe, 4.

The facts show that Lehman, Durr & Co. subscribed to the stock *before* the meeting of the stockholders, and *before* the adjournment of the legislature, and that *after* the *organization*, and after the bank had gone into operation, and after they knew of the organization, and knew that the amendment to the charter had failed, they paid the *ten per cent. of their stock*. The payment, under the circumstances, and after they knew that the bank had gone into operation, within two or three doors of their place of business, prevents them from now making the defense attempted. On the faith of the organization and of the subscription of stock, the appellee deposited her earnings in the bank, and it is neither justice nor law to allow these subscribers to defeat her claim, for the return of her money.

BRICKELL, C. J.—1. A garnishee can not take advantage of mere irregularities or defects rendering the judgment voidable at the election of the defendant, if within the time, and in the mode which the law prescribes, he pursues proper remedies to avoid it. If the judgment is not void, the garnishee will be protected from any further demand of the defendant if judgment is rendered against him. There are irregularities in the commencement and prosecution of suits at law, which are available to the party who may be injured by them, only by pleas or objections interposed at particular stages of the suit; and which before judgment are regarded as waived, ceasing to be impediments to its rendition, unless properly presented at the time and in the mode the law and the practice of the court may appoint. Of these is the *misnomer* of a party plaintiff or defendant, which is the matter of a plea in abatement, and which if not pleaded, is regarded as waived. When it becomes necessary to aver or plead the judgment, the real party, notwithstanding the mistaken name, may be connected with it by averment of his proper name. The plea in abatement of the want of correspondence between the name of the plaintiff in the garnishment and in the judgment was not well taken, and the demurrer to it properly sustained.

2. The garnishment is issued against the appellants as stockholders in the *Alabama Savings Bank*, and to subject so much as is due and unpaid on their subscription to the capital stock of the bank. The judgment was rendered on the uncontested answer of the appellants, and it can be sup-

ported only on the theory that an indebtedness is admitted, which the bank, if suing in its own name, could recover in an appropriate action. A garnishment is strictly a legal remedy, intended and adapted only to reach such legal demands, as the debtor could enforce; and whatever defenses, (there being no question of fraud, or collusion as between the garnishee and the debtor), would be available against the latter, are available against the creditor, pursuing this remedy. Such defences the garnishee may interpose by answer, and their truth as matter of fact will be presumed unless the plaintiff in the writ contests them. Their sufficiency in law, the court determines in pronouncing judgment on the answer.

3. The answer of the appellants admits a subscription for twenty-five shares, of one hundred dollars, to the capital stock of the bank, made during the session of the General Assembly of 1872–73, and that other subscriptions were made by other persons, who were desirous of organizing the bank, and transacting business, under the act of 1864, incorporating it, (Pamph. Acts 1864, p. 116), which was re-enacted and amended by an act approved February 12, 1867, (Pamph. Acts 1866–67, p. 397), if they could procure from the General Assembly, an amendment of the charter in relation to the form and character of the certificates of deposit, the bank could issue. The subscriptions of stock were conditional, dependent on obtaining such amendment; but as it was believed that such amendment would be more easily obtained if the corporation was organized, an organization was effected, the appellants not actively participating in it, by the election of a board of directors, a president and cashier. The amendment was not obtained, and after the adjournment of the General Assembly, the appellants paid ten per cent. of their subscription of stock, taking a receipt in writing for the amount paid, expressing that it was ten per cent. of their stock, which purports to be the act of the bank, and is signed by its cashier. The bank commenced and continued business with the knowledge of the appellants, for some time after this payment, and without so far as is shown by the answer, any dissent or objection from them. While so in operation, the appellee made a deposit of money with the bank, for which the judgment on which the garnishment issued, was recovered. The minimum of the capital as fixed by the act of incorporation, was one hundred thousand dollars, and ten per cent. of it must have been paid in, before the bank could go into operation. The answer denies that

there was one hundred thousand dollars subscribed to its capital stock, or, that ten per cent. of it was paid before the organization, or prior to the commencement of business by it. It is also insisted that the organization which was had, and the exercise of corporate power by the bank, were in vio-- lation of the statute, which inhibits the organization of private corporations after the expiration of two years from the date of their incorporation.—Code of 1876, § 2025.

The matters of defense against the liability of the appellants thus presented, are directed against the *legality*, and not the *fact* of the existence of the corporation. All corporations, public or private, are created by law. The power which they exercise, the right to exist, is derived from legislative grant, either under the operation of general laws, or from special enactment. They may exist either *de facto*, or *de jure*. If they exercise corporate power—if they possess and enjoy corporate franchises, under *color of right*, as when there is a legislative grant under which these are claimed, there can be no doubt, that a private person can not be heard to inquire into the *legality* of corporate existence. The corporation must of necessity be presumed to be rightfully in possession of the franchise, and rightfully to exercise the power, which the legislative grant confers. Individual right is not invaded, if the negative is true in fact, and there is usurpation. It is the State—the sovereign— whose rights are invaded, and whose authority is usurped. The individual could not create the corporation—could not grant, define, limit its powers; and no grant of these by the sovereign can lessen his rights. There can consequently be no cause of complaint by the citizen, and no right to inquire whether corporate existence is *rightful—de jure*, or merely *colorable*. There may be usurpation—all the conditions which the State may have imposed on its grant of authority, may have been violated. The usurpation is of the authority of the State—the violation of good faith, is of the faith due to the State, and not to any one of the citizens of the State. The State may acquiesce in the usurpation, and may waive the breach of the conditions on which rightful corporate existence depends. Within its sovereign power rests the election of acquiescence, waiver, or disputation. The individual can not intervene and exercise this power, and conclude the State, as he could not have intervened, and concluded the State by the grant of corporate existence and power. The grant of the State—the sovereign—can be construed alone by the power from which it proceeds, and the sovereign alone·

can determine whether there is usurpation, and not then, until those who claim the right have the opportunity of being heard.  Of the right they are exercising, it would be as odious and unjust to dispossess them, as to disseize the *liber homo* of the common law of his freehold, without due process of law.  There was a legislative charter of the *Alabama Savings Bank—a color of right* for the existence of such corporation ; and for the exercise of the powers the charter conferred.  It may be conceded, the corporation could not rightfully exist, unless it was organized and commenced operations within two years from the date of the charter.  The State imposed the limitation of time, and the State could waive it.  There was an acquiescence by the State in the subsequent organization ; and so long as the State acquiesced, individuals had no cause of complaint.  There was neither loss nor gain to them.  So it may have been a condition precedent to corporate existence, that the minimum of the capital stock, should have been subscribed, and ten per cent. thereof paid, before the corporation could exercise corporate power.  The condition was imposed by the State, and the State could waive its performance.  The waiver must be presumed, until the State intervenes.  The corporation incurs all its liabilities, is estopped from disputing them, and without infringing on the rights of the State, an individual can not be heard to inquire into the rightfulness of corporate existence.  It may be the public may sustain injury from the usurpation of corporate existence, but it must be presumed the sovereign jealous in the imposition of the conditions, will be as jealous in resuming the power granted only on the conditions which have not been performed.  Hence, the rule stated in the text books, and recognized by repeated decisions of this court, that the legality of the existence of a corporation, or the question of a forfeiture of its charter, if it has once had a legal existence, will not be inquired into collaterally, as in suits by or against the corporation in which it has legal claims against an individual, or an individual may assert legal claims against it.—*S. & T. R. R. v. Tipton*, 5 Ala. 787 ; *Duke v. Cahaba Navigation Co.*, 16 Ala. 272 ; *Harris v. Nesbit*, 24 Ala. 398 ; *Marion Savings Bank v. Dunkin*, 54 Ala. 471.  In *Sprowl v. Lawrence*, 33 Ala. 690, the principle is stated with clearness: "It is laid down as an established principle, that until the forfeiture of a charter is judicially decreed, neither the forfeiture nor the cause of it can be inquired into in another suit, nor can the existence

of the incorporation be questioned incidentally or collaterally."—Ang. & Ames, Corp. §§ 635, 636.

But upon another ground, the defences urged by the appellants can not be sustained. The fact of the existence of the corporation is undisputed, as is also the fact that the appellants contributed to its existence, organization, and transaction of business. The existence at first may have been intended as fictitious, though the design was to induce the General Assembly to believe it was real, and thereby invite favorable legislative consideration of the amendment of the charter. Whatever of objection could have been made, if any could have been made by the appellants to the validity of their subscription on this ground, they could waive; and they did waive, when subsequently they made a payment on their subscription, aiding to convert the *fictitious* into a real organization, setting the corporation into motion, and permitting it to exercise its corporate powers. The charter in express terms declares the capital stock *shall be a fund pledged for the security of depositors.* To this provision of the charter the appellants must be regarded as yielding assent, when they made the payment on their subscription for stock and acquiesced in the organization of the bank, and its transaction of business. The right of depositors had attached, the subscription became a security for them, and the appellants could not subsequently withdraw it to their prejudice; nor to the prejudice of the corporation, through whom the right may be after judgment enforced by garnishment.

It is also too well settled now to be controverted that a party who contracts with a corporation, whether it be by a subscription for its stock, or by promissory note, bond, mortgage, or other form of contract, is estopped from denying the existence of the corporation.—Ang. & Ames Cor. § 636; 1 Redf. Rail. 66, and authorities cited; *Eaton v. Aspinwall,* 19 N. Y. 119. If the corporation had been successful—if profits had been realized from the transaction of its business, the appellants would have reaped a just share. The corporation would not have been permitted to deny the legality of its existence, and interpose such denial to bar the right of the appellants. The estoppel is reciprocal, and binds the appellants now that the burthens of the contract are to be borne.

It is often said that when a corporation sues, its corporate existence must be shown, if it is controverted. When the action is against one contracting with it in its corporate ca-

pacity, the contract furnishes the evidence.   If the action is against a stranger, the user of the corporate power and franchise, and the color of right afforded by a legislative grant, is conclusive.   There may be contracts made with a corporation, and made expressly dependent on the fact of the legality of its organization, and in an action to enforce such contracts, the burthen of proving a legal organization may rest on the corporation.   This case is not of that character; nor is it of that class of cases in which the defense of *ultra vires* is involved.   A corporation can not enforce or be made liable on a contract, it was without capacity to make, and if the contract is without the scope of its powers, neither party is estopped from asserting its invalidity.—*City Council v. M. & W.R.R. Co.* 31 Ala. 76; *Marion Sav. Bk. v. Dunkin,* 54 *Ala.* 471. The extent of corporate power, is a very different question from the fact of corporate existence.   In the one case, the extent of power affects only the corporation, and the individual contracting with it; and they alone have rights or interests involved.   In the other, the State has the right, and the only right to inquire into the legality of corporate existence—to construe its own grant—to determine, if there is usurpation, whether it will acquiesce in it, or resume the power which has been usurped.   The City Court did not err in rendering judgment against the appellants.

Affirmed.

MANNING, J.—I desire not to be understood as expressing either assent to or dissent from some of the views and conclusions concerning mere usurpers of corporate franchises, presented and asserted in the opinion of the Chief-Justice. Some of them appear to me to be questionable.   Perhaps, if I had leisure to consider the subject thoroughly, my conclusions might entirely coincide with his.   I agree, however, that appellants have debarred themselves, according to their answer, from denying in this cause, the corporate existence of the body organized as the Alabama Savings Bank, set up by themselves and others, under the acts of the legislature passed to authorize the formation of such an institution, and from denying their membership therein, or liability as stockholders to the claim of appellee.

I therefore concur in the judgment of affirmance.

STONE, J., not sitting.