# Central Agricultural and Mechanical Association *v.* Alabama Gold Life Insurance Company.

*Creditors' Bill in Equity against Stockholders of Insolvent Corporation.*

1. *Private corporation; organization under general law.*—The statutory provisions relating to the organization of private corporations, which require that the declaration or articles of incorporation should be filed in the office of the secretary of State, and that the signatures of the sub-

[Cen. Ag. and Mech. Asso. v. Ala. Gold Life Ins. Co.]

scribers should be acknowledged before an officer authorized to take the acknowledgment of deeds (Rev. Code, § 1756), were imposed by the State in pursuance of its own policy, and especially for the benefit and protection of persons dealing with the corporation; and being conditions imposed by the State, they might be waived by the State, in the case of any particular corporation, by a statute expressly approving and ratifying its organization without a compliance with them.

2. *Organization and charter of Central Agricultural and Mechanical Association, under general and special laws; curative statutes, and statutes creating corporations.*—The defects in the organization of the Central Agricultural and Mechanical Association, under the general law then of force, were supplied and cured by the special statute, approved March 1st, 1871 (Sess. Acts 1870–71, p. 243), approving and ratifying its organization, and amending its charter. This statute was a valid exercise of legislative power, and was not violative of the constitutional provision, then of force, which prohibited the creation of corporations, other than municipal, by special act.

3. *Estoppel by contract with corporation.*—When a person contracts with an association which has the reputation of a legal corporation, and a *de facto* existence as a corporation, in the actual exercise of corporate powers and franchises, he is thereby estopped from denying its corporate existence, or inquiring into the legality of its organization, for the purpose of defeating the contract, or avoiding his liability under it.

4. *Legal existence of corporation; how assailed.*—When an association of persons is found in the exercise and user of corporate franchises, under color of legal organization, their existence as a corporation can not be inquired into collaterally : if the State acquiesces in the usurpation, individuals can not complain.

5. *Liability of stockholders for debts of corporation.*—Under a provision contained in the constitution of 1868, each stockholder in a private corporation was made liable for its debts "to the amount of stock held or owned by him;" and while this provision was of force, any clause in a statute creating or amending the charter of a corporation, which attempted to relieve the stockholders of this liability, would be inoperative and void.

6. *Same.*—The statute which made the stockholders of a corporation liable, to the extent of their stock, "for all debts due from it at the time of its dissolution" (Rev. Code, § 1760), did not contemplate a dissolution only as at common law, but a practical dissolution, which occurs whenever the corporation "becomes a nominal, inert body, reduced to insolvency, its property and funds all gone, rendering legal remedies against it fruitless and unavailing."

7. *Transfer of stock in insolvent corporation; validity as against creditors.*—A transfer of stock in an insolvent corporation, which the corporation refuses to enter on its books, is inoperative and void as against the existing creditors of the corporation, when it is not shown to have been made in good faith, and to a solvent person.

8. *Revision of chancellor's decision on facts.*—The chancellor's decision on a disputed question of fact will not be disturbed on appeal, "unless there is a decided preponderance of evidence against it."

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 4th February, 1874, by the Alabama Gold Life Insurance Company, a domestic corporation, as a creditor of the Central Agricultural and Mechanical Association, another domestic corporation, on behalf of itself and all other creditors who might come in and make themselves

parties; against the said Central Agricultural and Mechanical Association, and against Virgil G. Weaver and others, as stockholders, or subscribers for stock, in said defendant corporation; and sought to enforce against said stockholders and subscribers a personal liability, to the extent of the stock held by each, or the amount subscribed and not paid in, for the debts of said corporation, on the ground of its insolvency and dissolution. The complainant's debt was created by a loan of $15,000, on the 20th June, 1871, to said defendant corporation, for four years, at legal interest, payable semi-annually; for the principal of which sum the latter executed its promissory note, with eight other notes for the interest as it became payable, and also a mortgage on a tract of land in and near the city of Selma, known as the "Fair Grounds." Default having been made in the payment of the notes for interest, the mortgage was foreclosed on the 14th June, 1873, by a sale under the power therein contained; and the proceeds of sale, after deducting the expenses, being applied to the complainant's debt, a balance of more than $7,000 was left unpaid. The original bill alleged, that said defendant corporation "has no property or means with which to pay said debt, and is insolvent;" and by an amendment allowed at the hearing, these words were added, "and has ceased to do business, and is dissolved." The bill alleged, also, that "said association is a joint stock company, and a corporate body created under the general law of Alabama passed for the purpose of authorizing the creation of corporations without special act of the legislature therefor; that Seaborn J. Saffold is the president of said corporation, and he, Geo. O. Baker and P. D. Barker know, or have the means for knowing, and can state the names of all the stockholders of said corporation, and who have subscribed for stock." Saffold, Baker and Barker, were made defendants to the bill as stockholders, and Weaver as a subscriber for stock who had not paid his subscription; and it was alleged that the names of the other stockholders and subscribers were unknown to the complainant, and a discovery was sought as to them. C. W. Hooper, N. Woodruff, E. Gillman, N. R. H. Dawson and Jno. T. Morgan, were afterwards brought in as defendants, on the ground that they were stockholders in the defendant corporation.

A demurrer to the bill was interposed by the defendant corporation, which was overruled by the chancellor, and a decree *pro confesso* was afterwards entered against said corporation. A demurrer was also interposed by Woodruff, Dawson and Morgan, which the chancellor sustained, on the ground that the defendant corporation had no power to borrow money; but the chancellor's decree was reversed by this court on appeal, during its December term, 1875, as shown by the report of the

[Cen. Ag. and Mech. Asso. v. Ala. Gold Life Ins. Co.]

case (54 Ala. 73), and the cause was remanded. Hooper filed an answer to the bill, denying that said association was ever legally organized or constituted a body corporate, and denying his liability as a stockholder. Weaver also answered, denying that he was a stockholder or subscriber for stock, and denying the corporate existence of the association ; and separate answers were also filed by other defendants, admitting their subscription and contribution of money to the association, which they had paid, but denying their liability as stockholders, and alleging that the association was never legally organized or constituted a body corporate under the laws of Alabama. Decrees *pro confesso* were regularly entered against several of the defendants who failed to answer.

As to the organization and incorporation of the said Central Agricultural and Mechanical Association, the material facts, as shown by the record, are these : On the 4th June, 1869, a declaration of incorporation was filed in the office of the probate judge of Dallas county, by George C. Phillips and others, asking to "become a body corporate under and by virtue of the laws of the State, as found in the Revised Code of Alabama, sections 1755-62, by the name and style of the *Central Agricultural and Mechanical Association*, at Selma, Alabama, for the purpose and with the object of advancing and improving the agricultural and mechanical interests of the county and State." The names of the stockholders were subscribed to this declaration, with the number of shares taken by each; but the names of none of the defendants to this suit are subscribed to this declaration, and it was not acknowleged by the subscribers before any officer, as required by section 1756 of the Revised Code. At a meeting of the association, held on the next day, a committee reported that the declaration of incorporation had been duly filed; and another committee was appointed to prepare a constitution and by-laws for the corporation; and at subsequent meetings the constitution and by-laws, as reported, were adopted, officers elected, and the organization perfected.

On the 1st March, 1871, an act was passed by the General Assembly, entitled "An act to amend and ratify the charter of the Central Agricultural and Mechanical Association at Selma, Alabama," containing the following provisions: *Sec.* 1. " *Whereas*, on the 4th June, 1869, the stockholders of the Central Agricultural and Mechanical Association, at Selma, Alabama, filed in the Probate Court of Dallas county their declaration to become a corporate body according to the form of the statute in such cases made and provided, which said declaration was recorded ; and whereas large additions of stockholders have been made to said association, and the capital stock thereof increased, since said filing ; and whereas said association

have purchased lands, erected thereon costly buildings, and laid off their grounds, for the purpose of holding and carrying on fairs, and exhibiting and developing the agricultural and mechanical products of the State ; and whereas said association are in good faith carrying out the objects of the same; *therefore, be it resolved*, that said association is hereby declared to be a body corporate under the laws of the State, and they shall have power to purchase, hold, and sell land, issue stock or bonds, and pledge their property for payment of the same, and to sue and be sued, to have a common seal, and to do all other acts and things necessary to carry out the objects of said association, as above set forth." *Sec.* 2. "That said association may increase their capital stock to $100,000 ; and all persons who are now, or may hereafter become, stockholders in said association, shall be liable for the debts of the association, to the amount of whatever balances they may respectively owe on their subscriptions ; *provided*, this clause shall not in any way affect the present creditors of said association ; *and provided further*, that the secretary of said association shall, from time to time, file in the Probate Court of Dallas county the names of such stockholders as have heretofore, or may hereafter, become stockholders in said association, with a statement of the amount of stock taken by them, and the amounts paid in by each on said stock ; which said statement shall be filed once *per annum*, and the probate judge of said county shall record the same." *Sec.* 3. "The present board of directors and officers of said association, to-wit," naming them, "are hereby declared to be the officers and board of trustees of said association ; and they shall continue as such until their successors are duly elected and qualified." Section four conferred on the board of directors power to prescribe rules and regulations for the government of the association, not in conflict with the laws of the State, and expressly prohibiting banking privileges ; and section five repealed all conflicting laws.—Session Acts, 1870–71, pp. 243–4.

At a meeting of the board of directors held on the 20th June, 1871, as shown by the minutes of the board, a resolution was adopted, which recited the act above set out, and declared "that the amendments proposed in said act, and all things else therein contained, be, and the same are hereby, accepted by this association." At the same meeting, a new declaration of incorporation, which was filed in the office of the probate judge on said 20th June, 1871, was ordered to be recorded on the minutes, in these words :

"Whereas the undersigned, with other persons who are now deceased, or ceased to be stockholders or interested in the Central Agricultural and Mechanical Association, of Selma,

[Cen. Ag. and Mech. Asso. v. Ala. Gold Life Ins. Co.]

Alabama, did on the 4th day of June, 1869, sign and file their declaration, under the laws of Alabama, to incorporate a company to be known as the Central Agricultural and Mechanical Association at Selma, for the purposes expressed in said declaration; and whereas the same was not acknowledged, as required by the laws of the State, by the stockholders whose names were signed to said declaration; and whereas, on the 1st March, 1871, the General Assembly of said State did enact a law, entitled," &c., "which declared said association 'to be a body corporate under the laws of the State,' and that 'all laws, and parts of laws, in conflict with the provisions of this act, are hereby repealed'; and whereas doubts have arisen as to the validity of said declaration, and of said act of the General Assembly, and of the existence and validity of said declaration as a charter of incorporation of said association: Now, we, the undersigned, a portion of the signers of the declaration aforesaid, which is in the words and figures following," setting it out, "do hereby re-file the said declaration, and, so far as we can do so, by an acknowledgment of said original declaration, which is recorded," &c., "give force and validity to the same from said 4th day of June, 1869, as a charter under the laws of the State of Alabama, by the name and style set forth in said declaration; and if said act of the legislature is not valid, and did not make said declaration good as a charter under the laws of the State, from the date of the passage of said act, then we hereby re-file the above declaration, for the purposes therein expressed, and acknowledge the same in conformity to the laws of the State, and for the purpose of securing and obtaining the rights of an incorporation for ourselves and all who may be entitled to stock in said association, and our and their successors, in strict conformity to the statutes in such cases made and provided; and we hereby re-sign said declaration, by attaching our signatures to this application, and thereby verifying the amount of stock opposite to our respective names." To this declaration the names of fifteen persons were signed, all of whose names (except two) were signed to the original declaration, and it was acknowledged by them all, on the day of its date, before a justice of the peace; but the signatures do not embrace the names of any of the defendants to this suit. On the same day, and at the same meeting, the mortgage to the complainant was ratified, and the president and secretary were ordered to sign the notes and mortgage. On the 4th August, 1871, the secretary of the association filed in the office of the probate judge, as required by the said act of March 1st, 1871, a list of the stockholders and subscribers for stock in the said association; in which list the name of V. G. Weaver appears, as a subscriber who had not paid for any of his stock,

:and the names of the other defendants appear as stockholders who have paid.

On final hearing, on pleadings and proof, the chancellor rendered a decree, declaring "that the said Central Agricultural and Mechanical Association is a corporation, duly created and organized under and by virtue of the laws of Alabama; that said corporation, at the time of the filing of the bill in this cause, owned no property, had ceased to do business, and was in fact dissolved; that the complainant is a creditor of said corporation, and is entitled to relief as in the bill prayed; that said Virgil G. Weaver was, before the commencement of this suit, and now is, a subscriber to the capital stock of said association, to the amount of $500, and is indebted to the association for the full amount thereof; and that the other defendants named in the bill are stockholders in said corporation, and are liable for the debts of said corporation to the extent of the stock held and owned by them respectively." He therefore ordered a reference to the register, to ascertain the amounts due from each of the defendants respectively; and on the coming in of the report, rendered a final decree against each, for the amount found by the register.

From this decree an appeal is sued out by Weaver, Hooper, Gillman, Dawson, and Woodruff; and each assigns as error, severally, the decree holding him liable as a stockholder, and that part of the decree which declared that the defendant association had a legal existence as a corporation and was dissolved.

LAPSLEY & NELSON, for Weaver and Hooper; and with them PETTUS, DAWSON & TILLMAN, for the other appellants.—No incorporation was effected by the filing of the original declaration, in June, 1869; since that declaration was not acknowledged by the subscribers, as required by the statute.—Rev. Code, § 1756; *Canal Co. v. Woodbury*, 14 Cal. 424; 29 Cal. 124; 16 La. Ann. 153. The act of March 1st, 1871, could not give a legal existence to the association, unless it was already a corporation; since the constitution of 1868, then of force, prohibited the creation of private corporations by special laws. The chancellor does not say, in his decree, that this statute created the corporation, but only that it "secured a legal existence" to the corporation; and the act itself, by its title, purports only to "amend and ratify the charter" of the association. But the act itself shows an evident purpose and attempt, in defiance of the constitutional inhibition, to create a corporation; declaring that said association is "is hereby declared to be a body corporate;" conferring on it specified powers, and limiting the liability of its stockholders.

The statute can not be upheld as merely a curative statute. If

there was a legal corporation—if the association had a legal existence in fact—the legislature might have amended its charter, or cured any formal defect in its organization. But the power to cure, or to amend, does not include the power to create. The legislature may have the same power to ratify and confirm a corporate body irregularly organized, as to create a new one; but this is the extent of the authorities cited by the chancellor. *Mitchell v. Deeds*, 49 Illinois, 416; Cooley's Const. Lim. 371. Here, if the legislature could have created the corporation by special act in the first instance, it might have ratified and cured a defective organization by special act, and the validity of the law could not have been questioned; but the power to create by special act is taken away by express provision, and the inhibition can not be evaded by a curative statute. The legislature could not have dispensed in advance with any of the requisitions of the general law, in favor of this association, authorizing its incorporation on terms more favorable than are required of other citizens; nor can it make such discrimination by subsequent legislation. The constitutional provisions intended to prevent such discrimination, and to secure uniformity in the organization and powers of private corporations. If one formality, required by the general law, can be dispensed with, in favor of one corporation, another may be; and others may be dispensed with, in favor of other corporations; and the constitutional provision be thus practically nullified.

No argument, favorable to the complainant in this case, can be based on the acceptance of the ratifying act by the association. If accepted at all, it was accepted in its entirety, including the provision exempting stockholders from individual liability for debts; and its acceptance can not give the law any retrospective effect, or impart life to the association before the passage of the law. Neither Weaver nor Hooper is shown to have said or done anything, after the passage of this law, recognizing the corporation; nor are any of the appellants shown to have participated, at any time, in any use of the corporate powers, or to have done any act which can work an estoppel against them; and none of them were subscribers to the new declaration of incorporation, filed in June, 1871, on the day the complainant's debt was contracted. The filing of this declaration can only take effect from the day of its date, and only binds the subscribers and their successors in law; and in the resolutions adopting that declaration the act of March, 1871, is set out in full, including the clause exempting the stockholders from personal liability for debts. As against these appellants, it is submitted, the complainant's case is not made out, either under the special law, or under either declaration of incorpora-

tion.—*Gray v. Boston Iron Co.*, 9 Cush. 192; *Pollard v. Bailey*, 20 Wallace, 520; *Cumming v. Maxwell*, 45 Maine, 190.

The complainant's case fails on the proof, also, because it is not shown that the association, if a corporation at all, was dissolved when the bill was filed; and, indeed, the proof shows that it never has been legally dissolved. The statute contemplates a dissolution by a direct legal proceeding. Though a corporation may be dissolved, and its franchises lost by non-user, or neglect; yet the default must be judicially determined, in a suit instituted for the purpose, and it can not be made the subject of a collateral attack.—*Rex v. Amery*, 2 Term, 515; *Duke v. Cahaba Nav. Co.*, 16 Ala. 372; *Harris v. Nesbit*, 24 Ala. 398. The original bill did not proceed on the idea that a dissolution was necessary, but only averred that the defendant corporation was insolvent; and the allegation as to a dissolution was only added by amendment, allowed at the hearing. On the contrary, the original bill alleged, "that the said Agricultural and Mechanical Association *is* a joint stock company and a body corporate created under the general laws of Alabama," and "that said Seaborn J. Saffold *is* the president of the said corporation;" and M. H. Smith, a witness for the complainant, who had the custody of the books of said corporation, testifies that, on the 27th February, 1874, the day on which the bill was filed, there was in existence a regularly organized corporation, whose president, secretary and other officers are mentioned by him. The allegation that the company "has ceased to do business," was also added at the hearing, in April, 1877, by amendment; and the plaintiff's witnesses, testifying to that effect, speak in the present tense, as of the time when their depositions were taken, in September, 1875, and not of the day on which the bill was filed; and the same is true of their statements that the association "*is* insolvent," "*has* no property," &c. The single fact that the "Fair Grounds" were sold, under the power in the mortgage, six months before the bill was filed, does not establish the insolvency of the corporation at the time; and there is no legal evidence that it was insolvent, or had ceased to do business, when the bill was filed. The affirmative of the issue was on the complainants, if the bill had contained the necessary averments, and the defendants were not bound to negative by proof facts which were not even averred.—*Smith v. Huckabee*, 53 Ala. 196.

There is no proof that Weaver was a stockholder, or that he ever subscribed for any stock. He denies it under oath, and the only evidence against him is the testimony of Sturdevant, who says that he subscribed Weaver's name by his authority; but the testimony of Sturdevant is in direct conflict, in several particulars, with the documentary evidence, and with the testi-

[Cen. Ag. and Mech. Asso. v. Ala. Gold Life Ins. Co.]

mony of other witnesses. As against Weaver, the entry of his name on the books of the corporation as a subscriber is not admissible evidence, without other proof of the subscription. *Railroad Co. v. Hickman,* 28 Penn. St. 318; *Mayor v. Wright,* 2 Porter, 230.

Brooks & Roy, *contra.*—1. By virtue of the original declaration, filed in June, 1869, the amending and ratifying law, and the subsequent filing and acknowledgment on the 20th June, 1871, the defendant corporation became an existing and lawfully organized corporation, as of the 4th June, 1869; and it so continued until, as the proof shows, it ceased to do business in the summer of 1873. The only defect in the organization, under the declaration originally filed, was the failure of the subscribers to acknowledge it, as the law then required; and this defect, of which the State only could take advantage, might have been cured, if material, by subsequent acknowledgment, as in case of a deed. But this defect was cured by the statute ratifying and amending the charter of the corporation, which was accepted by the corporation; and the list of stockholders was filed, as required by that act. The legislature might thus cure the defect in the organization of this corporation, as it has since dispensed with the acknowledgment in all cases, by repealing the statute which required it. The validity of such curative laws, though necessarily retrospective, is well sustained by authority.—Cooley's Const. Lim. 371, 373–9; *Syracuse Bank v. Davis,* 16 Barbour, 188.

2. The State only, the sovereign power, can question the regular and lawful creation of a corporation under its laws. The corporation itself is estopped by its acts and user; a person who has dealt with the corporation, thereby recognizing its legal existence, is estopped; and a stockholder, who has participated in its acts and benefits, is estopped.—Herman on Estoppel, §§ 571–573; *Eaton v. Aspinwall,* 19 N. Y. 119; *Sands v. Hill,* 42 Barbour, 651.

3. The dissolution of the corporation, required by law as the condition on which the personal liability of the stockholders can be enforced, is not a *judicial* dissolution, but a dissolution in substance; that is, indebtedness, insolvency, and ceasing to do business.—*Poughkepsie Bank v. Ibbottson,* 24 Wendell, 479; *Terry v. Tubman,* 2 Otto, 161; 19 Johns. 456; 8 Cowen, 387.

4. By constitutional provision, and by the general statute (Rev. Code, § 1760), the measure of the liability of each stockholder, for all debts due by the corporation at the time of its dissolution, is declared to be the amount of his stock. This is in addition to the liability for unpaid subscriptions, and is a

[Gen. Ag. and Mech. Asso. v. Ala. Gold Life Ins. Co.]

part of the corporate property, and enforceable for the benefit of creditors, just like the liability for unpaid subscriptions. Abbott's Dig. Corp. 396, §§ 191–2; *Simonson v. Spencer*, 15 Wendell, 548; 24 Wendell, 473; 3 Paige, 409; 17 N. Y. 458; 19 Johns. 456; 8 Cowen, 387; 19 N. Y. 119; *Smith v. Huckabee*, 53 Ala. 294. The special provision in the act of March, 1871, if intended to destroy or diminish this liability, is inoperative and void, being in contravention of the constitutional provision.

5. The books of a corporation, and all the entries in them, are admissible evidence against the corporation, and against the stockholders, but not in their favor, as against third persons. *Mayor v. Wright*, 2 Porter, 230; Angell & Ames on Corp. 535–6; 1 Greenl. Ev. § 493; *Allen v. Coit*, 6 Hill, N. Y. 318. In this case, it appears, the stockholders, or persons desiring to become such, were not required to subscribe their own names: their names were merely given to the secretary, and he made the proper entries on the books. If this was informal, or irregular, neither the corporation nor the stockholders can take advantage of it, when sued by creditors.—Abbott's Dig. Corp. §§ 108–9; *Bank v. Man. Co.*, 9 Cush. 576; *McHose v. Wheeler*, 45 Penn. St. 32.

6. The entry of Weaver's name on the books as a stockholder is presumptive evidence that he is such, and throws the burden of proof on him.—*Hoogland v. Bell*, 36 Barbour, 57; Abbott's Dig. Corp. § 101. The letter of the secretary to Weaver, calling on him to pay his subscription, corroborates the correctness of the entry; and his failure to reply to it, repudiating the liability, is an admission of its correctness.—1 Greenl. Ev. § 197, and cases cited; *Watson v. Byers*, 6 Ala. 393. The testimony of Sturdevant is corroborated, in several essential particulars, by other witnesses; and on all the evidence adduced, the chancellor's decision, if not affirmatively sustained, is not shown to be wrong.

7. Hooper claims to have sold his stock to one Solomon, who was a non-resident; and he applied, in 1873, to have the transfer made on the books of the corporation; but the company refused to make the transfer, and it never has been transferred. In 1873, the debt to the complainant had been already contracted, and default had been made in payment; the corporation was insolvent, and had ceased to do business. On these facts, the liability of Hooper can not be doubted.—Rev. Code, §§ 1785–6; Abb. Dig. Corp. 752, §§ 157–69; *Allen v. Railroad Co.*, 11 Ala. 451; *Roman v. Fox*, 5 J. J. Mar. 634; *Marcy v. Clarke*, 17 Mass. 330.

BRICKELL, C. J.—The questions of law presented by the

[Cen. Ag. and Mech. Asso. v. Ala. Gold Life Ins. Co.]

.assignment of errors, and by the argument of counsel, depend upon a few general principles, which we must regard as well settled.

It is not disputed, that the "Central Agricultural and Mechanical Association" in fact existed as a corporation, acquiring property in that capacity, exercising powers, and transacting business essential to accomplish the objects and purposes of its creation, as expressed in the declaration intended as the articles of incorporation ; nor can it be doubted, that it had the reputation of being a corporation in the rightful and lawful exercise of corporate powers. Having this existence and reputation, it is undisputed, that the appellants (with the exception of Weaver) became and were subscribers for its capital stock, paying their subscriptions, entitled to, or exercising all the rights and privileges to which they would have been entitled, or could have exercised, if there had been no defects in the proceedings preliminary to the organization of the association—if that organization had been in strict conformity to law, incapable of being questioned in any judicial proceeding.

The organization of the association, originally, was intended to have been effected under the general laws authorizing the formation of private corporations, which were of force on the 4th June, 1869. Under these laws, as a pre-requisite, or a condition precedent to rightful, complete, lawful incorporation, the application for incorporation must have been filed in the office of the secretary of State, and the signing thereof by the subscribers must have been acknowledged before an officer authorized to take the acknowledgment of deeds.—Pamph. Acts, 1868, p. 349; R. C. § 1756. In the words of the statute, it was only when these things were done, that the subscribers *became a body corporate, with the powers conferred by the laws on private corporations.* The purpose of these requisitions was, that there should be in the office of the secretary of State, the keeper of the State seal and public records, having authority to certify all such records, evidence of all incorporations under the laws of the State. The acknowledgment before a public officer, of the signing of the declaration, or application, as it is indifferently termed in the statute, afforded the best evidence of who were the original corporators or stockholders. . These requisitions, or conditions, were not observed in the original organization of the association; and it may be true, that rightful corporate existence could not have been maintained, if the State had intervened for usurpation of corporate authority. These requisitions, or conditions, were imposed by the State, in pursuance of its own policy, and for the benefit and protection, especially, of all dealing with the corporation. Imposed by the State, compliance with, or observance of them, the State could

waive. The waiver was expressed, most emphatically, in the subsequent statute declaring the existence of the association as a corporation, approving and ratifying its organization, and amendatory of its charter.—Pamph. Acts, 1870–1, p. 243.

If it could be conceded, that individuals who have entered into contracts with a corporation, recognized its corporate existence, could avoid the liabilities they have voluntarily incurred, by a disputation of the *legality*, not *of the fact* of corporate organization and existence; all ground for contention is removed by this statute, obviously intended to remove it, and to cure the defects in the actual organization. The power of the legislature is plenary, when not restrained by constitutional limitation, to enact laws operating retrospectively, if thereby the obligation of contracts is not impaired, or vested rights infringed, modifying or changing the effect of past transactions, so that the intention of the parties to them may be fully accomplished. Defects or irregularities in judicial proceedings, in the assessment of taxes, State and municipal, the failure of statutory powers, because not executed with the prescribed formalities, have all been cured by such legislation, as have been irregularities in the organization of corporations, public and private. The rule, applicable in such cases, is thus stated by Judge Cooley: "If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law."—Cooley's Const. Lim. (4th ed.) p. 463. Clearly, the requisitions not observed in the organization of the corporation, were statutory formalities prescribed by the legislature, and the power to prescribe involves the power to dispense with them.—*Black River & Utica R. R. Co. v. Barnard*, 31 Barbour, 258; *Mitchell v. Deeds*, 49 Ill. 416.

Nor is the statute offensive to the clause of the constitution of 1868, declaring that "corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes." The statute does not form, or create a corporation. Before and at the time of its enactment, the corporation was formed, existed *de facto*, having color of right. That existence it could have maintained, if the State acquiesced, —if the State did not intervene to oust it.—*Lehman v. Warner*, 61 Ala. 455; *Cahall v. C. M. B. Association, Ib.* 232.

But, can it be conceded, that the appellants can inquire into

the *legality* of the existence of the corporation? We think it must be regarded as settled, that whoever contracts with a corporation, having a *de facto* existence, the reputation of a legal corporation, in the actual exercise of corporate powers and franchises, is estopped from denying the legality of the existence of the corporation, or inquiring into irregularities attendnig its formation, to defeat the contract, or to avoid the liability he has voluntarily and deliberately incurred.—*Chubb v. Upton*, 95 U. S. 666; *Dutchess Man. Co. v. Davis*, 14 Johns. 237; *M. E. Church v. Pickett*, 19 N. Y. 482; *Mitchell v. Deeds*, 49 Ill. 416; *Cahall v. C. M. B. Association*, *supra*. The principle is especially applicable to stockholders, seeking to avoid a liability to creditors of the corporation. Their own acts vitalized the corporation, gave it credit, invited and induced dealings with it; and it is true conservatism, and sound policy, promotive of right and equity, to seal their lips against contradiction and denial of that which they must be taken to have affirmed, to the injury of strangers who have trusted the affirmation. *Lehman v. Warner, supra ; Chubb v. Upton, supra ; Eaton v. Aspinwall*, 19 N. Y. 119; *Upton v. Hansborough*, 3 Bissell, 417.

Another principle is well settled; that when an association of persons is found in the exercise and user of corporate franchises, under color of legal organization, their existence as a corporation can not be inquired into collaterally. In a direct proceeding by the government, they may be ousted; but persons transacting business with them can not be heard to deny, or to assail, the legality of corporate existence.—*Lehman v. Warner, supra; Duke v. Cuhaba Nav. Co.*, 16 Ala. 372; Ang. & Ames Cor. § 94. If the State acquiesce in the usurpation, it is not for individuals to complain. The corporation exists *de facto*—is subject to all the liabilities, duties, and responsibilities of a corporation *de jure*. It would produce only disorder and confusion, embarrass and endanger the rights and interests of all dealing with the association, if the legality of its existence could be drawn in question, in every suit to which it was a party, or in which rights were involved springing out of its corporate existence. No judgment could be rendered, which would settle the question finally. But, when the government intervenes by an appropriate proceeding, the judgment is final and conclusive, putting an end to controversy. In no aspect of the case, were the irregularities in the original organization of the association proper matter of inquiry, nor grounds of defense for the appellants.

The statute, forming part of the general laws under which the association was organized, and of force when the contract was made with the appellee, declared: "The stockholders of any such corporation are liable for all debts due from it at the

time of its dissolution, to the extent of their stock."—Rev. Code, § 1860. We shall not inquire, whether this statute is modified, or repealed, or whether its modification or repeal, as to this association, was intended by the clause of the second section of the curative statute to which we have referred, touching the liability of stockholders. It is possible a field for the operation of that clause may be found, without bringing it in conflict with the statute. If that be not true, the clause is repugnant to, and violative of the second and third sections of the thirteenth article of the constitution of 1868, which fixed on each stockholder in a private corporation the liability the statute imposes—a liability for the debts of the corporation to the amount of his stock.

The liability is contingent,—dependent on the dissolution of the corporation. That is the event rendering it capable of enforcement.—*Smith v. Huckabee*, 53 Ala. 191. It was, perhaps, true at common law, that a corporation was capable of dissolution only by abuse or misuser of its franchises, and a consequent judicial forfeiture; by surrender, accepted of record; or by the death of all its members.—2 Kent, 378; *Corporation of Colchester v. Seaber*, 3 Burr. 1866. This doctrine, it has often been said, can be of very limited application to the private corporations in this country, organized for commercial, or trading, or business purposes, which are but little more than special partnerships. In respect to these corporations, liability for the debts of the corporation due at the time of dissolution being imposed on the members, it has been repeatedly held, that a dissolution according to the modes of the common law is not intended. Whenever there is a practical dissolution, so far as the rights and remedies of creditors are concerned—whenever the corporation becomes "a nominal, inert body," its property and funds gone, and it is reduced to insolvency, rendering legal remedies against it fruitless and unavailing—the liability of the stockholder or member becomes absolute, and the right and remedy of the creditors to enfore it accrues. —Thompson on Liability of Stockholders, § 267. In the leading case of *Slee v. Bloom*, 19 Johns. 477, the facts of which are not very dissimilar to the facts of this case, said Chief–Justice SPENCER: "In point of good sense, this corporation was dissolved, within the meaning and intent of the act, as regards creditors, when it ceased to *own* any property, real or personal, and when it ceased, for such a space of time, from doing any one act manifesting an intention to resume their corporate functions. The end, being and design of the corporation, were completely determined; and if even it had the capacity to re-organize, and re-invigorate itself, the case has happened, when, as relates to its creditors, it is dissolved."

[Cen. Ag. and Mech. Asso. v. Ala. Gold Life Ins. Co.]

The insolvency of the association is not a disputed fact. All its visible, tangible property had been sold from it, under the mortgage to the appellee. It was without money; and if it had any assets, they consisted of unpaid subscriptions for its stock, which were not available; and if they had been, would not have relieved its embarrassment, or enabled it to resume operations. For all practical purposes, though it may have been possible for the association to re-organize and re-invigorate itself, as to creditors it was dissolved, within the meaning of the statute. Any other doctrine would be unreasonable, and would render the statute, and the liability it imposes, incapable of affording the creditors of corporations the benefit and security intended.

When Hooper proposed the transfer of his stock, the debt to the appellee had been contracted, and the association had become insolvent. To the transfer, the association refused assent, and on its books Hooper remained in the relation, and with the rights of a stockholder. Without now discussing whether, under any circumstances, a stockholder may, by a transfer of his stock, relieve himself from liability to existing creditors, we are satisfied the facts do not show a *bona fide* transfer which can or ought to be supported against them. The solvency of the transferree is not shown, and the circumstances, which are not neutralized by opposing evidence, point strongly to the conclusion, that the purpose was to relieve Hooper from the liability incurred to existing creditors. As to them, the transfer must be esteemed void.—*Allen v. M. R. R. Co.*, 11 Ala. 451; Thompson on Liability of Stockholders, § 215.

The remaining question, whether Weaver was a stockholder in the association, is one of fact, dependent on conflicting evidence, which seems to have been very carefully considered and weighed by the chancellor. We incline to concurrence in his conclusion, that the fair preponderance of the evidence supports the claim that Weaver, through the agency of Sturdevant, subscribed for the stock of the corporation. Whether this be the just conclusion or not, it is certain it can not be affirmed that there is a decided preponderance of evidence against it; and, of consequence, under the settled practice, the decree can not be disturbed.—*Rather v. Young*, 56 Ala. 94.

Affirmed.