THE NATIONAL UNION BANK OF WATERTOWN, Respondent, *v.* HORACE LANDON et al., Appellant.

Where stockholders in a manufacturing corporation, upon the expiration of its charter, agree to continue the business, and appoint one of their own members as agent with managing powers, and further agree to furnish money, when called upon by such agent, to carry on the business, in proportion to the amount of stock held by each in the old corporation,— *Held*, that they all became liable as partners as to third persons, and for debts contracted by such agent in carrying on the business, on the ground that he had the power as partner to bind the others. And when commercial paper, for the benefit of the firm, was made by such agent, signing the name of the old corporation, by himself, as agent,—*Held*, that all the members of the association are liable upon such paper to its full amount, it appearing that it was understood that the business was to be carried on in the name used in signing the note.

*It seems* that the fact that the plaintiff, when he took the note, supposed it was a note of the corporation, and was ignorant of its dissolution, does not affect the question of liability.

(Argued April 20th; decided April 25th, 1871.)

APPEAL from a judgment of the late General Term of the Supreme Court, in the fifth judicial district, affirming judgment for the plaintiff on the report of a referee.

Action upon a note made by "Redwood Iron Manufacturing Company by S. C. Sardam, agent," payable to order of M. W. White for $10,000, and indorsed by White. The other facts are sufficiently stated in the opinion of the court.

*John H. Reynolds*, for the appellant. An erroneous legal conclusion from the facts proved entitles the appellant to a reversal of the judgment. (*Mead* v. *Bunn*, 32 N. Y., 279.) Upon any reasonable construction of the agreement, Sardam had no power to make the note. (1 Story on Agency, §§ 62, 68, 69, and cases cited in notes; *Hubbard* v. *Elmer*, 7 Wend., 446; *Rossiter* v. *Rossiter*, 8 Wend., 494; *Hantangen* v. *Brown*, 7 M. & W., 595; *Fenera* v. *Depew*, 17 How., 418; *Mills* v. *Carnly*, 1 Bosw., 159; *Brisbane* v. *Adams*, 2 Coms., 129; *Union Bank* v. *Mott*, 39 Barb., 180; *Webber* v. *Williams College*, 23 Pick., 302; 2 Hill, 159; 2 Johns., 48.) In the interpretation and construction of all instruments, the object and intent of the parties, as collected from the whole instrument, are to be considered and effect to be given to them. (Platt on Cov., 138; Parsons on Part., 58; Coll. on Part., § 208; 1 Fonbl. Eq., 440; *Copperman* v. *Gallant*, 1 P.Wms., 315, notes; *Wescott* v. *Thompson*, 18 N. Y., 363; *Norton* v. *Woodruff*, 4 Seld., 442; *Rogers* v. *Keredan*, 10 Wend., 218; 13 Wend., 114.) The agreement was for a single venture and for a special purpose. (Parsons on Part., 57, 58; *U. S. Ins. Co.* v. *Scott*, 1 Johns., 112; *Brandred* v. *Mazzy*, 1 Dutcher, 268; *Chandler* v. *Brainard*, 14 Pick., 446; *Clark* v. *Reed*, 11 Pick., 450; *Sorter* v. *McClure*, 15 Wend., 187; *Patterson* v. *Blanchard*, 1 Seld., 186; *Heimstreet* v. *Howland*, 5 Denio, 68.) Assuming that Sardam was the general agent of the defendants, he could not bind his principals by note. (Story on Agency, §§ 106, 126; *Hantangen* v. *Brown*, 7 M. & W., 595; 23 Pick., 302; *Take* v. *Cameron*, 8 Metc.,

458; *Page* v. *Stone*, 10 Metc., 160; *Vanderbilt* v. *Richmond Turnpike Co.*, 2 Comst., 482.)

*James F. Starbuck*, for the respondent. The associates were partners. (Pars. Mer. Law., 164; *Chase* v. *Bassett*, 4 Paige, 148; *Compton* v. *McNair*, 1 Wend., 457; *Tappan* v. *Bailey* 4 Metc., 529; *Sage* v. *Sherman*, 2 Comst., 418.) A joint stock association not incorporated is a partnership, although organized by its articles analogously to a corporation. (*Wells* v. *Gates*, 18 Barb., 554; *Dennis* v. *Kennedy*, 19 Barb., 517; 19 Wend., 424; 5 Hill, 478.) Acts are competent evidence, although the partnership is established by deed. (2 Greenl. Evi., § 483; 1 Chitty Pl., 30, note.) The partnership was liable, notwithstanding the articles declared the members should not be. (*Bank of R.* v. *Monteath*, 1 Den., 402; *Mechanics' Bank Ass'n* v. *N. Y. and Sau. Lead Co.*, 23 How., 74; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y., 546, 559; Angell & A. on Cor., 7 ed., § 297; *Royal British Bank* v. *Turquand*, 32 Eng. L. & E., 273; 11 John., 544; 6 Wend., 615.) The defendants directly recognized the validity of the notes. (Story on Part., § 192; Story on Agency, § 253, *et seq.;* Paley on Agency, 4 Am. ed., 171, and note.)

GROVER, J. Prior to the agreement of November 18th, 1863, there had been a corporation by the name of Redwood Iron Manufacturing Company, engaged in the manufacture of iron, at Redwood. This corporation had become extinct by the expiration of the time limited for its existence by its charter. At the time of its dissolution, it was the owner of certain real estate, and of some personal property adapted to such manufacture. On the 18th of November, 1863, all the stockholders in the late corporation, except one, made and signed the following agreement: "We, the undersigned, stockholders of the former Redwood Iron Manufacturing Company, hereby agree to unite in getting up a stock for another full-blast, or as near so as possible, and run the furnace and make iron; and we hereby constitute and authorize S. C. Sardam as

agent or superintendent to manage or carry on said furnace and getting up stock for said blast, to sell iron, and do everything pertaining to said business; and we individually agree at all times to furnish money when called on by said Sardam for the purpose of defraying the expenses for carrying on said business; that we are to pay *pro rata*, meaning in proportion to the amount of stock held and owned in said iron manufacturing company by each of us." Among the former stockholders, who signed the agreement were all of the appellants, and Sardam, the person named therein as agent or superintendent. Pursuant to this agreement, Sardam took possession of the real and personal estate of the late corporation, purchased stock, employed men, and prosecuted the business of manufacturing iron. The principal question discussed by counsel was, whether this agreement created a partnership as to third persons, between the parties thereto, in the business of manufacturing iron. The determination of this question, if in the affirmative, will substantially settle the rights of the parties to this action, as it will, in that event, be shown that Sardam had not only such powers of agency as were expressly conferred upon him by the agreement, but, in addition thereto, those of a partner in the firm. To determine whether a partnership was created by the agreement or not, its construction must be considered. The parties were the equitable owners, substantially, of the real estate to be used in the business, in proportion to the stock respectively owned in the late corporation. By the agreement, each agreed, in like proportion, to furnish the necessary capital to carry on the business of manufacturing iron therein, and, further, that this iron should be sold for their joint account by the manager of the business, appointed by them. · It is obvious that all the parties under the agreement were entitled to participate in the profits acquired in the business, in proportion to their interests therein, which was in proportion to the capital contributed by each respectively, and were liable in the same proportion, as between each other, for any loss that might be incurred in the business. The agreement admits of no other construction.

Such an agreement constitutes a partnership, as to third persons, within all the authorities, irrespective of any particular agreement between the partners themselves limiting the right of each to make contracts binding upon the firm. (Parsons' Mercantile Law, 164; Story on Partnership, §§ 2, 15, 18, 20, 75; Parsons on Partnership, 6; *Compston* v. *McNair*, 1 Wend., 457; *Bank of Rochester* v. *Monteath*, 1 Denio, 402.) Sardam being a partner, it follows that he was authorized to draw and accept drafts and make notes in the name of the firm, in all matters connected with the business of the firm, and that such paper would be valid as against all the members of the firm, in the hands of *bona fide* holders, although Sardam might have drawn, accepted or made it in fraud of the rights of his partners. Applying these principles to the present case, the right of the plaintiff to recover against the appellant the amount of the note in suit is manifest. The referee finds, and his finding is supported by the evidence, that Sardam drew upon Bostwick and Landon each a draft of $5,000, and negotiated the same to White, in part to pay a debt owing by the firm to him, and in part for advances made by White to Sardam for the firm, and for money paid by White in taking up notes against the firm, to the entire amount of the two drafts; that White procured a discount of these drafts from the plaintiff; that they were sent forward for collection, and returned protested for non-acceptance; that, for the purpose of retiring these drafts, Sardam made the note in suit, payable to the order of White, who procured the plaintiff to discount the same, and with the proceeds pay and cancel the drafts. It thus appears that the proceeds of the note were applied directly for the benefit of the firm. Upon this ground, the plaintiff was entitled to recover. But it is said by the counsel for the appellant that the plaintiff did not know of the existence of the partnership at the time of discounting the drafts and notes. The testimony of the plaintiff's cashier, who transacted this business, shows this to have been true. He testified that the plaintiff had discounted paper for the corporation, and that he was unaware of its dissolution, and sup-

posed that this was corporation paper. But this furnishes no answer to the claim of the plaintiff. The latter believed the paper to be that of the corporation, from the fact that the firm did their business in the same name; but this did not affect the right of the plaintiff to proceed against the real makers of the note, upon discovering who were transacting business under that name. This makes it unnecessary to inquire whether the plaintiff was not also entitled to recover upon the other grounds relied upon by the referee. I think he erred in holding some of the evidence, received to establish such grounds, competent. But the judgment cannot be reversed for that reason, because it clearly appears that the defendant was not prejudiced thereby; the plaintiff being entitled to recover, wholly irrespective of the truth of any fact that such evidence tended to establish. The same remark applies to the ruling of the referee that the appellants must be presumed to have known that Sardam was procuring notes to be discounted for the firm. The partners were bound by such notes, irrespective of such knowledge. The judgment appealed from must be affirmed, with costs.

All the judges concurring.

Judgment affirmed.