## THE MOHAWK NATIONAL BANK OF SCHENECTADY, RESPONDENT, *v.* CHRISTOPHER VAN SLYCK AND OTHERS, APPELLANTS.

*Partners — when the parties to an agreement are liable as — adopting the name of one partner as the firm name — liability of the partners for notes indorsed in such name — a purchaser of the note is not affected by the misapplication of the proceeds.*

On April 24, 1878, the defendant Toll and the other four defendants entered into a written agreement under seal by which Toll was to make and the others were to indorse his note for $4,000. Toll was to have the note discounted and with the avails thereof purchase brooms, which he was to have insured in his own name, it being understood that the agreement was to be kept secret. The brooms were to be held by Toll, not exceeding three months, until a majority of the others should direct a sale. After deducting from the proceeds of such sale the said note, and any others given in the like manner and for the like purpose, together with his actual disbursements, the residue was to be divided equally between the said five parties, and the losses, if any, were to be equally borne by them. Thereafter four notes were made and indorsed in pursuance of the agreement. All of these were discounted for and placed to the credit of Toll by the plaintiff's bank, and the proceeds thereof were drawn out by Toll by his checks and used to purchase brooms. Pursuant to the directions of the other defendants he commenced to sell the brooms in September, and continued to do so until he failed in December. Toll was also during all this time engaged in selling brooms on his own account. His individual business and the business conducted under the agreement were kept in separate books, but he kept but one bank account.

In October, Toll sold some of the brooms purchased under the agreement and received in payment therefor two notes, payable to his own order, which were indorsed by him with his own name, and were discounted by the plaintiff and the proceeds thereof placed to his credit. In this action, brought by the plaintiff against the defendants to recover the amount due upon the said two notes:

*Held,* that the agreement and the acts of the parties under it made them copartners

That the capital of the firm was the avails of the discounted notes and Toll's name was the firm name.

That the notes, having been received upon the sale of brooms belonging to the firm, were firm property; and that as they were indorsed with the firm name, and the proceeds thereof were placed to the credit of the account in which the firm moneys were deposited, the defendants were liable as indorsers.

That if Toll afterwards used money from the mixed account for his own purposes which should have been used for the firm business, that was an act to which the plaintiff was in no way a party and for which it was not responsible.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict directed by the court, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought to recover the amount due upon two promissory notes, the plaintiff claiming that the defendants were liable as indorsers thereof.

On the 24th of April, 1878, the defendants made a written and sealed agreement; the defendant Toll being the party of the second part, and the other defendants parties of the first part. The defendants Bronson and Stratton composed the firm of E. D. Bronson & Co. The defendants Van Slyck and De Forest composed the firm of Van Slyck & De Forest. Each firm was to be considered as one person; and therefore, in this respect, there were three persons parties to the agreement. By this agreement Toll was to make his note for $4,000 which was to be indorsed by the others. He was to have this note discounted and with the avails he was to purchase brooms. He was to insure them in his own name; was to retain them until a majority of the other persons should direct a sale, or until three months from the date of the agreement. He was then to sell them, and with the avails pay the note and any other notes made in like manner and for like purpose, after deducting his actual expenses and disbursements. The residue he was to distribute to the five persons equally, he being one. In case of loss on the whole transaction, each person, Toll being one, was to lose one-fifth. It was understood and agreed by the parties at the time that the agreement should be kept secret, and it was kept secret until after the discounting of the notes in question in this action.

Under this agreement and under directions of defendants, given

from time to time, Toll made and they indorsed four notes, which were discounted for him and the proceeds placed to his credit in his bank account, and the avails expended by him from time to time by his checks drawn against his bank account for brooms bought in New York. All of these brooms were bought in his own name and were shipped to Schenectady. Such purchases continued to about September 1, 1878. Meetings of the defendants were held about every two weeks, and they ordered the making of the additional notes. No directions were given him to sell until September first, when they ordered him to sell. He did so, and continued to sell from time to time till his failure in December, 1878.

While he was selling such brooms he was also engaged in selling brooms on his own account. His individual business and the business carried on under the agreement were kept separate, and separate books were kept. The banking business was all done by Toll in his individual name. All payments on account of the contract were made by drawing on his individual account.

In October, 1878, he sold some of the brooms purchased under the agreement and took two notes therefor, one dated September 15, 1878, at four months, for $418; the other dated October 11, 1878, at three months, for $299.40. These notes were payable to his order and were indorsed by him; they were discounted by the plaintiff, and the amount was put to his credit in his bank account. The plaintiff had not then any knowledge of the agreement, and discounted the notes on the credit of the makers and of Toll. The first note was discounted the twelfth, the second the fifteenth of October. These notes were not paid at maturity and were duly protested, etc. On the eleventh of October his account was over drawn $126.54. Upon obtaining the discount, October twelfth, he drew against it for $200, and the account was overdrawn four dol lars and twenty-six cents. On the fifteenth of October, after crediting the avails of the other note, there stood to his credit $1,044.80. He made no payment on account of any liability under the agreement between October eleventh and October thirtieth. On the last mentioned day he drew $550, with which he paid one of the notes made by him and indorsed by the other defendants as aforesaid, which had been discounted to raise money to buy brooms as aforesaid.

*S. W. Jackson*, for the appellants.

*Alonzo P. Strong*, for the respondent.

LEARNED, P. J.:

The agreement and the acts of the parties under it made them copartners.   This is not such a case as that of *Burckle* v. *Eckhart* (1 Denio, 337), cited by defendant, where there was no community of interest in the capital stock; where Eckert acted only as agent or servant; subject to orders of his employers; having nothing to do with losses; but taking his share of profits in lieu of wages.   On the contrary, in this agreement, each person was to share equally in losses as well as profits.   It is expressly said that, in case of loss, Toll was to contribute ratably.   The capital was the avails of the discounted notes.   And Toll had a community of interest therein. Toll was not only interested in the profits, as such, but he was the active partner in the business.   And between all the persons interested there was a community of interest as to profits and losses. (*Leggett* v. *Hyde*, 58 N. Y., 272.)   Nor did the defendants offer to give evidence that their motive in what they did was to aid Toll by way of friendship or the like.   (*Tracy* v. *McManus*, 58 N. Y., 257).

The agreement shows that the business was to be done in the name of Toll.   He was to purchase and to sell — in whose name, if not in his own?   He was to insure expressly in his own name. Therefore his name was the partnership name.   (*Bank of Rochester* v. *Monteath*, 1 Denio, 402; *Nat. Bank of Watertown* v. *Landon*, 45 N. Y., 410; *Ontario Bank* v. *Hennesy*, 48 id., 545.)

Again, the notes in question were given by the makers in payment of brooms belonging to the defendants, which brooms were sold to the makers by that one of the defendants who had charge of the business, and were sold by their directions.   The notes therefore were the property of the defendants, payable to them, under the name by which they were conducting the business. Until the rights of *bona fide* holders should intervene, the defendants might claim that these notes were their property and were not the property of Toll individually.

When therefore Toll indorsed the notes, the indorsement was that of the partnership.   Because the notes were payable to the partnership and belonged to the partnership.   The liability, then,

of the defendants to the plaintiff does not rest upon the plaintiff's knowledge, but upon the fact that by the indorsement the defendants' property was transferred to the plaintiff. If Toll had sold brooms belonging to the defendants, they would have been bound by the terms of the sale; for instance, to guaranty the title or the quality. He sold to plaintiffs two notes which belonged to the defendants, and they are bound by the terms of that sale, one of which was the guaranty of indorsement. (*Winship* v. *Bank of U. S.*, 5 Peters, 529.)

This is not a case where a partner, whose name is assumed by the firm, borrows money only on that name, and where extraneous proof may be needed to show whether the transaction was that of the individual or of the firm. The difference is that there is no doubt that, in this case, Toll was dealing with partnership property. Whatever he received on the sale or discount belonged necessarily to the firm, because it was the avails of the firm property.

But it is insisted by the defendants that Toll misappropriated the avails of the notes and applied them to his individual account. That does not appear. There was no application made of the discount to the overdraft; and even if the account of Toll was overdrawn before the discount, we must remember that such account was the firm account as well as Toll's individual account. The overdraft may have been caused by payments for the firm as well as for him as an individual. And again, deducting the second discount, October fifteenth, Toll's account was, on that day, good for over $600, so that the temporary overdraft of October eleven had been more than made up. Further, on the thirtieth of October Toll drew from his account $550 and paid therewith a note of the defendants. So that they actually had the benefit of the greater part of these discounts.

Nor can it be said that Toll, by the discounting, misappropriated the notes or the avails, since, according to the agreement of the parties, he was to keep the account and do the business in his own name. He deposited the avails, therefore, to the credit of the account where the firm money was kept. Had he deposited the avails in the name of all the defendants, he would have violated the arrangement between them, which imposed secrecy. And indeed the alleged misappropriation could only be made by indors-

ing the firm name, since, as we have seen, the notes were payable to the firm. Hence, when the notes were discounted, they had the firm name indorsed thereon, and the avails were deposited to an account, in which, according to the arrangement, the money of the defendants had been kept. If Toll afterwards, from the mixed account, used money for his own purposes, which should have been used for the partnership business, that was an act to which the plaintiffs were in no way a party, and for which the plaintiff is not responsible.

We see no error in the refusals of the court, and think that the case was properly decided.

Judgment and order affirmed, with costs.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment and order affirmed, with costs.