# Snider's Sons' Co. *v.* Troy.

*Action for Goods Sold and Delivered to Corporation, against
Corporator as Partner.*

1. *Corporation de facto defined.*—A corporation *de facto* exists when,
from irregularity or defect in the organization or constitution, or from
some omission to comply with conditions precedent, a corporation *de
jure* is not created, but there has been a colorable compliance with
the requirements of some law under which an association might law-
fully be incorporated for the purpose and with the powers assumed,
and a *user* of the rights claimed to be conferred by the law; that is,
when there is an organization with color of law, and the exercise of
corporate franchises and functions.

2. *Estoppel by contract with corporation de facto.*—A person who con-
tracts with a corporation *de facto*, within the scope of powers which
would belong to it as a corporation *de jure*, is estopped to deny its
corporate character, and can not maintain an action against the cor-
porators individually as partners.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by the Louis Snider's Sons' Com-
pany, a corporation created under the laws of Ohio, against
D. S. Troy, and was commenced on the 15th February, 1890.
The complaint contained a single count, which claimed $827.92
for goods consisting of paper and other printing materials, sold
by plaintiffs in March, April, May, and July, 1888, to or on the
order of the Dispatch Publishing Company, then publishing a
newspaper in the city of Montgomery. The complaint alleged
that said publishing company was at the time a partnership,
and defendant was one of the partners; that the company
claimed to be a corporation under the laws of Alabama, but
was never in fact incorporated; that it was insolvent when
plaintiffs' account matured, and has ceased to do business.

The defendant filed a special plea, alleging that on the 2d
October, 1885, he and two other persons named, filed in the
office of the judge of probate of Montgomery county a declara-
tion in writing for the formation of a corporation under the
name of the Dispatch Publishing Company, stating the sub-
stance of the declaration, "all of which will more fully appear
by reference to the same, a copy of which, with the indorse-
ments thereon, is hereto attached as an exhibit, and made a
part of this plea; that this defendant and his associates, im-
mediately after the filing of said declaration as aforesaid, pro-

ceeded to organize said Dispatch Publishing Company, by electing a board of directors consisting of three members, as by law provided, and, on the organization of said company as aforesaid, commenced doing business under the name and style of the Dispatch Publishing Company, by the publication of a newspaper in said city of Montgomery; that the debt now sued for was contracted by said company as such corporation, and not otherwise; that plaintiff's knew that said company was doing business as a corporation, and made said contract with it as a corporation, and not as a partnership, or association of individuals, and dealt with it as a corporation, and sold said bill of goods to it as a corporation, and not in any other capacity whatsoever."

The declaration of incorporation was in these words : "The undersigned, being desirous of forming an association for the publication of a newspaper, and for conducting the business of printing, binding and publishing in all branches thereof, and buying and selling books, papers, type, presses, stationery, and printing material, and all other merchandise used in connection with, or incident to the business aforesaid; to borrow and loan money, and to take to itself and execute notes, bonds and obligations for money so borrowed or loaned, or for any other purpose, and to make any and all contracts and agreements incident or convenient to the transaction of its business, and of becoming incorporated,—do make and subscribe this declaration in writing, and state, (1) that the name of the association is the *Dispatch Publishing Company*, and the object for which it was formed is the publishing newspapers in the city of Montgomery, and exercise of the powers hereinabove enumerated; (2) that the capital stock of said corporation is $10,000, divided into one hundred shares, of the par value of $100 each; (3) the names of the stockholders, and the number of shares held by each, are as follows," naming them.

The court overruled a demurrer to the plea, and its judgment is here assigned as error.

E. P. MORRISSETT, for appellants.—The theory of the plaintiffs' case is, that the defendant is liable as at common law, for goods sold to the Dispatch Publishing Company, notwithstanding the abortive attempt to incorporate made by him and his associates in that enterprise; that the attempted incorporation was a nullity, and neither conferred any rights on the parties, nor discharged them from personal liability. The defense is, that the Dispatch Publishing Company was a corporation *de facto;* that plaintiff dealt with it as a corporation, and is estopped from holding the members liable except as stock-

[Snider's Sons' Co. v. Troy.]

holders. The case involves the question, to what extent will the doctrine of corporations *de facto* be carried? will the courts recognize and enforce statutory requirements, as conditions precedent to corporate existence, or, in effect, expunge from the statute-book, as meaningless, the several provisions which regulate the formation of different kinds of corporations, organized for different purposes, and endowed with different powers? or will some line of demarkation be drawn, separating mere irregularities in corporate organization, where acts may be valid by recognition as those of a corporation *de facto*, from the fundamental requirements which are conditions precedent to corporate existence?

The attempt to incorporate the Dispatch Publishing Company, made in 1885, was evidently intended to conform to the requirements of section 1937 of the Code of 1876, though the declaration failed to state the residences of the corporators; and if that omission had been the only defect, it might have been regarded as a mere irregularity. But that statute had nothing to do with the case, having been repealed, as to such corporations, by the act approved December 6th, 1882, amending sections 1803–04 of the Code of 1876.—Sess. Acts 1882-3, p. 5. That this was the effect of the said amendatory statute, leaving the former without field of operation *quoad hoc*, see *Scott v. Simons*, 70 Ala. 355–6; *Bickley v. Keenan & Co.*, 60 Ala. 295. Said statutory provisions, the only law applicable to this case, required, as essential conditions precedent to organization, that when a declaration was filed as prescribed, the judge of probate should issue to the parties, or any two or more of them, a commission constituting them a board of corporators; that when fifty per cent. of the capital stock had been subscribed by *bona fide* subscribers, the board of corporators should call together the subscribers, who should proceed to organize the company by the election of a board of directors; that upon the completion of the organization, and the payment in cash of at least twenty-five per cent. of the capital subscribed, these facts should be certified by the board of corporators to the judge of probate; and he was then required to issue to the company his certificate that it had been fully organized under the laws of Alabama. The question presented by the record is, not as to which of these provisions is mandatory and imperative, or how many of these requirements can be safely dispensed with; but, what is the effect of the failure to comply with any of them? None of these things was done, or pretended to be done. The entire law was ignored and disregarded, whether inadvertently or purposely is immaterial; and the only steps taken towards incorporation were under a

[Snider's Sons' Co. v. Troy.]

statute which had been repealed. Do these facts show the existence of a corporation *de facto*, behind which the defendant can shield himself from personal liability?

The general proposition is conceded, that one who receives a benefit from an association, in recognition of its corporate capacity, can not be heard, in avoidance of a correlative obligation, to deny the authority to impose it. This is the equitable principle announced in *Lehman v. Warner* (61 Ala. 455), and *Cent. A. & M. Asso. v. Ala. Gold Life Ins. Co.* 70 Ala. 120); and it is specially applicable to stockholders seeking to avoid liability to creditors, and is chiefly intended for the protection of strangers.—70 Ala. 86; 84 Ala. 621. But this is a suit by a creditor against a proposed corporator, no rights of third persons intervening, and no question of public policy arising. Acts in excess of corporate authority do not estop parties who have dealt with the corporation from showing that such acts are *ultra vires*. Can greater effect be allowed to acts or transactions which are without any authority whatever? That the Dispatch Publishing Company, if sued as a corporation, would be estopped from showing that it was not a corporation, does not estop a creditor from showing that there was no corporation. Mutuality is not an indispensable requisite of an estoppel.—Bigelow on Estoppel, 597, note 2; 143 Mass. 109–15; 115 U. S. 512; 16 La. Ann. 153. An abuse of corporate franchises, or the unlawful exercise of powers not conferred, can be remedied only by the State, by proceedings in the nature of *quo warranto;* but any person interested may collaterally assail the existence of a corporation, by showing non-compliance with conditions precedent to organization. The attempt at incorporation here being a nullity, the defendant is personally liable, as at common law, on contracts within the scope of the common business.—Cook on Stock and Stockholders, § 233, note; 73 Ill. 197; 16 La. Ann. 153; *Wells v. Gates*, 18 Barb. 554; 35 Ark. 144; 78 Ind. 344; 56 Iowa, 104; 79 Mo. 401. The contrary doctrine, asserted by Morawetz, is founded on *Fay v. Noble*, 7 Cush. 188, which is unsound in its reasoning, though the conclusion may be correct.

TOMPKINS & TROY, *contra.*—The law recognizes two classes of corporations—corporations *de jure*, and corporations *de facto*. The difference between them is clearly defined, and the facts necessary to constitute the one are not necessary to constitute the other. 'An organization under color of law, and the exercise of corporate functions, constitute a corporation *de facto.—Lehman, Durr & Co. v. Warner*, 61 Ala. 455;

*Cent. A. & M. Asso. v. Gold Life Ins. Co.,* 70 Ala. 121, or 3 Amer. & E. Corp. Cases, 90; 2 Mor. Corp., §§ 777–8; 89 Ind. 389; 16 Ind. 275; 7 Atl. Rep. 362. The parties signing the declaration of incorporation in this case were certainly not partners *inter sese*—they had no intention of creating a partnership, and the court will not make them partners.—*Ward v. Brigham,* 127 Mass. 24; *Bank v. Walker,* 66 N. Y. 424; Cook on Stock, &c. § 232. The plaintiff dealt with the corporation, and not with the corporators individually or as partners; and the court will not attempt to make or enforce a new contract between them.—2 Mor. Corp., § 748; Taylor on Corp., §§ 148, 739; *Bank v. Padgett,* 69 Geo. 159; *Bank v. Stone,* 38 Mich. 779; *Fay v. Noble,* 7 Cush. 188; *Trowbridge v. Sadler,* 11 Cush. 83; 22 Fed. Rep. 197; 4 A. & E. Encyc. Law, 199, note 1.

But section 1937 of the Code of 1876, it is contended, was not repealed, either expressly or by necessary implication, by the statute amending sections 1803–04 of that Code. Each of these statutes relates to the organizations of corporations for industrial enterprises or purposes; but there are material differences between the two, leaving an option to corporators as to which statute they will organize under. Under one statute, the corporation is limited to twenty years; under the other, its duration is unlimited. Under one, the names of the corporators appear on the public records; under the other, they do not. The statutes are in the nature of cumulative remedies, and one does not repeal the other by implication.

CLOPTON, J.—A corporation *de facto* exists, when from irregularity or defect in the organization or constitution, or from some omission to comply with the conditions precedent, a corporation *de jure* is not created, but there has been a colorable compliance with the requirements of some law under which an association might be lawfully incorporated for the purposes and powers assumed, and a *user* of the rights claimed to be conferred by the law—when there is an organization with color of law, and the exercise of corporate franchises. *Meth. E. Un. Church v. Pickett,* 48 N. J. L. 599.

The enabling law, under which a corporation for the purposes and objects of the Dispatch Publishing Company, and with the powers assumed, might have been lawfully created at that time, is contained in sections 1803–1812 of the Code of 1876, and the amendatory acts, which authorize and provide for the incorporation of two or more persons desirous of forming a private corporation for the purpose of carrying on any industrial or other lawful business not otherwise specially

provided for by law.—Acts 1882–3, p. 40. The plea avers that defendant and two other named persons filed, September 2, 1885, with the judge of probate of Montgomery county a written declaration, signed by themselves, setting forth substantially the matters required by the statute, except the residences of the persons; that they organized by the election of three directors, and commenced and continued to do business in a corporate capacity, and were so doing business when the debt sued for was contracted. If the averments of the plea be true, the truth of which is admitted by the demurrer, the Dispatch Publishing Company was an association having capital stock divided into shares, organized by the election of officers, transacting business, and exercising franchises, functions and powers, after an attempted incorporation, as if it were a corporation *de jure*—a colorable compliance with the requirements of an existing and enabling law, and *user* of the rights claimed to be conferred thereby—the essential elements of a corporation *de facto*.—*Cen. Agr. & Mech. Asso. v. Ala. Gold Life Ins. Co.*, 70 Ala. 120.

Appellant seeks by the action to hold defendant, who was a member, liable as a partner for paper and other supplies sold to the Dispatch Publishing Company. Whether the shareholders in a corporation *de facto* are individually liable for the corporate debts, in the absence of fraud or a statute, is a question as to which the authorities are in direct antagonism. In Cook on Stock and Stockholders, § 233, the doctrine asserted is: "A corporate creditor, seeking to enforce the payment of his debt, may ignore the existence of the corporation, and may proceed against the supposed stockholders as partners, by proving that the prescribed method of becoming incorporated was not complied with by the company in question." The leading cases supporting this doctrine are *Bigelow v. Gregory*, 73 Ill. 197; *Abbott v. Omaha Smelt. Co.*, 4 Neb. 416; *Garrett v. Richardson*, 35 Ark. 144; *Ferris v. Thaw*, 72 Mo. 446; *Richardson v. Mayo*, 40 Ohio St. 9; *Coleman v. Coleman*, 78 Ind. 344. We have omitted reference to a few cases sometimes cited, for the reason, that either the question of liability as partners was not before the court, as in *Blanchard v. Kaull*, 44 Cal. 440; or the debt was contracted before any steps were taken, other than the mere filing of a certificate, toward organization, as in *Porpoise Fish Co. v. Bergen*, 13 Amer. & Eng. Cor. Cas. 1; or it was contracted after the expiration of the charter by its own limitation, without re-organization, as in *Nat. Bank v. Landon*, 45 N. Y. 410. In the case last cited, the share-holders entered into a special agreement, which by its terms created a partnership as to third persons.

In 2 Mor. on Corp. § 748, the doctrine is stated as follows: "If an association assumes to enter into a contract in a corporate capacity, and the party dealing with the association contracts with it as if it were a corporation, the individual members can not be charged as parties to the contract, either severally or jointly, or as partners." The following cases maintain the doctrine, that the members of a corporation *de facto* can not be held liable as partners for the corporate debts: *Fay v. Noble*, 7 Cush. 188; *First Nat. Bank v. Avery*, 117 Mass. 476; *Stout v. Zulick*, 48 N. J. L. 599; *Plan. Bank v. Padgett*, 69 Ga. 164; *Mer. & Man. Bank v. Stone*, 38 Mich 779; *Humphrey v. Mooney*, 5 Cal. 282; *Cen. City Sav. Bank v. Walker*, 66 N. Y. 424; *Gartside Coal Co. v. Maxwell*, 22 Fed. Rep. 197; *Whiting v. Wyman*, 101 U. S. 392.

The plea and demurrer do not raise the question of the liability of the supposed stockholders as partners, where there has been no intention or attempt to incorporate; where they are acting as a body corporate, without even color of legislative authority—sheer usurpation. The plea avers that the debt sued for was contracted by the Dispatch Publishing Company, which is alleged to have been a *de facto* corporation, and that plaintiff sold the goods to, and contracted with the company as a corporation, knowing that it was doing business as such. The question before us, and the only question we propose to decide, is whether, there being no fraud alleged, nor statute making the stockholders individually liable, a creditor who has dealt with a *de facto* corporation as a corporation, who has entered into contractual relations with it in its corporate name and capacity, can disregard the existence of the corporation, and, electing to treat it as a partnership, enforce the collection of his debt from the stockholders individually? The conflicting authorities afford aid in the solution of this question, only so far as their opinions may be in accord with settled principles and sustained by reason. Though it is an undecided question in this State, principles have been well settled, which materially bear upon the inquiry, and mark the way to a correct conclusion.

Corporations may exist either *de jure*, or *de facto*. If of the latter class, they are under the protection of the same law, and governed by the same legal principles as those of the former, so long as the State acquiesces in their existence and exercise of corporate functions. A private citizen, whose rights are not invaded, who has no cause of complaint, has no right to inquire collaterally into the legality of its existence. This can only be done in a direct proceeding on the part of the State, from whom is derived the right to exist as a corpo-

[Snider's Sons' Co. v. Troy.]

ration, and whose authority is usurped. This principle was clearly and emphatically declared in *Lehman v. Warner*, 61 Ala. 455, in the following language; "The corporation must, of necessity, be presumed to be rightfully in possession of the franchise, and rightfully to exercise the power, which the legislative grant confers. Individual right is not invaded, if the negative is true in fact, and there is usurpation. It is the State—the sovereign—whose rights are invaded, and whose rights are usurped. The individual could not create the corporation—could not grant, define, limit its powers; and no grant of these by the sovereign can lessen his rights. There can consequently be no cause of complaint by the citizen, and no right to inquire whether the corporate existence is rightful —*de jure*—or merely colorable."—Taylor on Corp. § 145; 4 Amer. & Eng. Encyc. of Law, 198. · The creditor can not proceed against the stockholders as partners, without proving non-compliance with prescribed conditions precedent, thus inquiring collaterally, not into the fact, but the legality of its existence. ·

It is also an established rule of general application, that a party who contracts with a corporation, exercising corporate powers, and performing corporate functions—existing as a *de facto* corporation—in its corporate name and capacity, will not be permitted, in a suit on the contract, to deny and disprove the rightfulness of its existence.—4 Amer. & Eng. Encyc. of Law, 198. In *Smartwood v. Michigan Air Line R. R. Co.*, 24 Mich. 390, Cooley, J. declares the rule as follows: "Where there is thus a corporation *de facto*, with no want of legislative power to its due and legal existence, when it is proceeding in the performance of corporate functions, and the public are dealing with it on the supposition that it is what it professes to be, and the questions are only whether there has been exact regularity and strict compliance with the provisions of the law relating to corporations; it is plainly a dictate alike of justice and public policy, that in controversies between the *de facto* corporation and those who have entered into contract relations with it, as corporators or otherwise, that such questions should not be suffered to be raised." ·

The general rule is thus stated by BRICKELL, C. J.: "Whoever contracts with a corporation in the use of corporate powers and franchises, and within the scope of such powers, is estopped from denying the existence of the corporation, or inquiring into the regularity of the corporate organization, when an enforcement of the contract, or of rights arising under it, is sought."—*Cahall v. Citizens' M. B. Asso.*, 61 Ala. 232; *Central Agr. & Mech. Asso. v. Ala. Gold Life Ins. Co.*, 70 Ala. 120; *Schloss v. Montg. Trade Co.*, 87 Ala. 411.

[Snider's Sons' Co. v. Troy.]

It is conceded that the rule has been invoked, and applied most frequently in suits against the stockholders of corporation, or persons who have contracted with it, where the stockholder, corporation or person is seeking to avoid a liability by denying the legality of the corporate organization. But why should it not be applicable in other cases? Why should a stockholder be estopped, in a suit by a creditor of an insolvent corporation, to require payment of his unpaid subscription, and the creditor allowed to ignore the existence of the corporation, and proceed against the stockholder as a partner? Why should not the estoppel be mutual? Taylor, in his work on Corporations, § 148, having stated the general rule, that a corporation when sued on its contract, and the person who contracted with it, when sued on his contract, is each estopped to deny its legal incorporation, adds: "Furthermore, persons who have contracted with a corporation as such, and have acquired claims against it, are estopped from denying its corporate existence for the purpose of holding its share-holders, liable as partners." And the same rule was applied in several of the cases cited above, in which a corporate creditor was seeking to hold the stockholder liable as a partner for a corporate debt. The abrogation of the foregoing well established rule is the logical sequence of maintaining a suit by a creditor of a *de facto* corporation, charging the stockholders as partners.

Another consideration. Section 8 of Article XIV of the Constitution declares: "In no case shall any stockholder be individually liable, otherwise than for the unpaid stock owned by him or her." Exemption from liability, other than for unpaid stock, is the declared policy of the State. It can not be imposed by legislation, or by the judgment of a court. In view of the constitutional provision, it is manifest that the share-holders of the Dispatch Publishing Company intended, by the attempt to incorporate, to avoid individual liability for the debts contracted by the corporation. When a party deals and contracts with a corporation as corporators, exemption from individual liability enters as an element of the contract. It is true that the liability of persons associated in an enterprise or adventure is not determinable by the name they assume, but by the legal consequences of their acts. A partnership may arise as to third persons, by mere operation of law, and contrary to the intention of the parties; but, to have this effect, the elements essential to constitute a partnership as to third persons must exist. A corporation *de facto* has an independent *status*, recognized by the law as distinct from that of its members. A partnership is not the necessary legal consequence of an abortive attempt at incorporation. As said

[Cummings v. May.]

in *Fay v. Noble, supra*, "Surely, it can not be, in the absence of all fraudulent intent, that such a legal result follows as to fasten on parties involuntarily, for such a cause, the enlarged liability of co-partners, a liability neither contemplated nor assented to by them. The statement of the proposition carries with it a sufficient refutation."

Maintenance of such suit involves judicial nullification of franchises and powers enjoyed and exercised by a *de facto* corporation, as a distinct entity recognized by the law, acquiesced in by the State; defeats the corporate character of the contract, changes the relation from that of stockholders to that of partners; substitutes other and new parties to the contract, and effects the imposition of an enlarged liability, which they did not assume, but intended to avoid; so understood by the creditor, when he contracted the debt with the corporation as such. The contract is valid and binding on the corporation, which the creditor trusted. ⟨No injustice is done him, for all his rights and remedies are preserved by the principle that the corporation and the share-holder are estopped from denying its legal existence, as against him.⟩ It will not answer to say that he is not repudiating, but enforcing the contract. He repudiates the party—the corporation—with which he made the contract, and seeks its enforcement against parties who never entered into contractual relations with him.

The doctrine that a creditor who has dealt with a *de facto* corporation, in its corporate capacity, can not charge the stockholders as partners with the corporate debt, there being no fraudulent intent alleged and proved, seems to us to be sustained by the weight of authority, maintained by stronger reasoning, consistent with well settled principles, and in harmony with the policy of the State.

Affirmed.