JAMES K. DUKE, APPELLANT, VS. GREENFIELD TAYLOR, ET AL., APPELLEES.

1. The domicile and citizenship of a corporation belong to the State under whose laws it is created. It exists only in contemplation of law and by force of the law, and where that law ceases to operate the corporation can have no existence. Hence a corporation must dwell in the place of its creation, and can not migrate to another sovereignty.

2. Though a corporation must dwell in the place of its creation, its existence there will be recognized in other places, and its residence in one State creates no insuperable objection to its power of contracting in another.

3. Where a corporation has been legally created and organized under the laws of a sister State for the transaction of any business there, it may, by comity existing between the States, transact business in this State, provided it be not in contravention of our laws or public policy.

4. A corporation created under the laws of one State can not hold corporate meetings in another for the purpose of organizing the-

corporation, electing its officers, or performing any strictly corporate functions in its organization.

5. The courts will not take judicial knowledge of the laws of another State under which a corporation is claimed to have been created, when the corporate existence is in issue, but proof of such laws must be made in order that the courts may be advised of the legal warrant for the creation of such corporation.

6. A corporation *de facto* is one where the company has made an effort to organize under some law authorizing the creation of such a corporation, but there is an irregularity in the organization; and where a corporation *de facto* exists and does legitimate business in its corporate name, the stockholders are not liable as partners. There can, however, be no corporation *de facto* unless it can exist *de jure*.

7. An attempted organization of a corporation in this State under a supposed charter obtained under the laws of another State, no authority being shown for the grant of such charter, or of user thereunder in the State of its creation, renders the participants in the attempted organization here liable as partners, on proper demands against such association.

8. One must contract with or deal with an association as a corporation exercising corporate powers before he can be estopped from denying its existence as a corporation.

Appeal from the Circuit Court for Orange county·

STATEMENT.

Appellants instituted suit against appellees, Taylor and fifteen others, as partners doing business as the Florida Orange Hedge Fence Company, on a note as follows:

"ORLANDO, FLA., March 23d, 1887.

Two months after date we, or either of us, for value received, jointly and severally, as principals, promise to pay to the order of Collis Ormsby, at the First National Bank of Orlando, at its office in. Orlando, Florida, the sum of six hundred and fifty-four dollars; and·

it is further agreed that if this note be not paid at maturity, the same shall draw interest at the rate of three per cent. per month after maturity until paid, together with an attorney's fee and all costs should said note be collected by law. We each hereby waive all right to any exemption by law and under the Constitution, and permit any legal execution to levy upon whatever we may have to satisfy this note.

> FLORIDA ORANGE HEDGE FENCE COMPANY,
>> BY ITS PRES. JNO. W. CHILDRESS,
>> JAMES A. KNOX,
>>> As Secretary and Treasurer."

Endorsed—COLLIS ORMSBY.

The declaration alleges the transfer and endorsement of the note to appellant before maturity.

Taylor, James A. Knox and Wiley Abercrombie were served, and they filed pleas as follows: That the Florida Orange Hedge Fence Company was a corporation organized under the laws of the State of Tennessee, and doing business in the State of Florida, and that said company was not then and had never been a partnership. Second, that the note sued on was given by the president and secretary of said corporation for a corporation debt, and that the same was accepted as the note of the corporation, and not as the note of a partnership, and that plaintiff knew when the note was assigned to him that it was a note of a corporation, and he accepted it as such.

Taylor filed two separate pleas, the second one of which was overruled on demurrer and no amendment offered. The plea not demurred to alleges that defendant was not then and had never been a member of any copartnership known as the Florida Orange Hedge

Fence Company, and he knew of no such copartner-
ship. Issue was joined upon the pleas recited, and the
record shows that the cause was, by consent of par-
ties, submitted to the judge without a jury, upon the
plea in abatement, and that the court submitted the
plea in abatement and dismissed the cause. The ap-
peal from this decision was entered to the January
Term, 1892, of this court.

On the trial defendants put in evidence a certified
copy of a charter purporting to have been obtained un-
der the general laws of the State of Tennessee for or-
ganizing corporations. The alleged charter recites that
by virtue of the general laws of the land five persons
named were constituted a body corporate by the name
of Florida Orange Hedge Fence Company, for the pur-
pose of planting, wiring, trimming and manufacturing
fence; and certain enumerated powers incident to cor-
porations are conferred upon the company. The terms
of all officers, not to exceed two years, are to be fixed
by the by-laws, and the directors, to consist of five or
more members, at the option of the corporation, are to
be elected by a majority of votes cast, each share rep-
resenting one vote. The directors are required to keep
a full and true record of all their proceedings, and an
annual statement of the receipts and disbursements is
required to be copied on the minutes. The books of
the corporation are required to show the original or
subsequent stockholders, their respective interest, the
amount paid on shares, the transfer of stock, by and
to whom made, and also other transactions in which
a stockholder as creditor might have an interest. The
first board of directors was to consist of five or more
corporators, and they were to apply for and obtain the
charter. The name of the corporation is the Florida

Orange Hedge Fence Company, but there is nothing in the grant of powers to indicate that the corporation was organized to do business in Florida, or in any other State than Tennessee. The certified copy of the charter offered in evidence has attached to it a certificate under the hand and seal of the clerk of the county court of Montgomery county, Tennessee, that the named corporators acknowledged the execution of the instrument for the purposes therein contained, and also a certificate from the Secretary of State that the charter, with certificate of probate, was received and duly registered by him.

Appellees proved by the deposition of one of the corporators that at least three of them met in Clarksville, Tennessee, soon after the charter was obtained, but the witness was unable to say, as he did not remember, what formalities were had in the way of electing officers. At this meeting the means and methods of operating the company were considered, and a conclusion was reached to go to Florida for the purpose of carrying out the plans of operation. In pursuance of the determination reached, three of the corporators went to Orlando, Florida, and the evidence of this witness, as well as others introduced by appellees, shows that, at the place named in this State, officers for the corporation were elected, stock was issued, the corporation organized and started its business in Orange county, Florida. After the corporation was organized in this State, a record was made upon the books of the company of the meeting in Tennessee, and appellees put this in evidence. It is as follows:

"CLARKSVILLE, TENN., February 31st, 1885.

Whereas, C. G. Smith, W. M. Daniel, A. Howell and H. C. Marritt, of Tennessee, and Samuel Johnson,

of Kentucky, on the 16th day of February, 1885, obtained a charter for the Florida Orange Hedge Fence Company from the State of Tennessee, which charter is in words and figures following, to-wit." (Then follows a copy of the charter with certificates on it, including one from the recorder of Montgomery county, Tennessee, that record of the instrument had been made in his office). The minute concluding as follows: "And whereas, the said charter provides that said five persons named as incorporators in said charter shall constitute the first board of directors, and in pursuance of the forms granted them, a quorum of said directors this day met in the office of Smith & Lurton, in the city of Clarksville, Tennessee, there being present C. G. Smith, W. M. Daniel and Samuel Johnson. C. G. Smith was, on motion, made chairman. and, on motion, Samuel Johnson was made secretaty. C. G. Smith presented to the board the resignations of A. Howell and H. C. Marritt as directors in the company, which were accepted. Thereupon the board adjourned.

Chas. G. Smith, Chairman,<br>Secretary."

This minute was made from memoranda supposed to have been reduced to writing at the time of the meeting. The testimony further shows that three named corporators, after the meeting in Tennessee, went to Orlando, and, with others, the defendants in the present suit being among them held meetings, adopted a corporate seal, elected officers and issued stock to subscribers, and that the parties participating in the organization of the corporation in this State, and acquiring stock therein, did so in good faith, believing that the corporation was legally incorporated. Ormsby,

the party to whom the note sued on was given, was secretary under the organization in Florida, and the note was for services due from the company to him as secretary. The organization here continued to do business openly as a corporation under the charter mentioned, but took no steps towards organizing a corporation under the laws of this State by filing articles of incorporation or doing any of the things required to form a corporation here. A witness for appellees stated that the company did business openly and notoriously as a corporation in Orange county, Florida, and that its place of business was near the business house of appellant; that he did not know that appellant knew when he received the note that the company was a corporation, but had reason to believe that he did. Witness was not positive, but was under the impression that the company set some hedge fences for appellant. The effect of the latter's testimony is that he did not know that the Florida Orange Hedge Fence Company was a corporation, and supposed it was a joint stock company; that Ormsby informed him that the stockholders were individually liable for the payment of the note, and that it was so stated in the articles of agreement. He also stated that "the book he showed it to me in was a large book similar to this" (pointing to the record book of the company). "He turned to the book and read to me in substance as follows: 'The stockholders are severally and jointly liable individually at all times for all money due and owing to laborers, servants, clerks and operatives of the company.'" It was also shown that the defendants sued were stockholders and members of the company when the note was given.

The other facts are stated in the opinion.

*W. H. Jewell*, for Appellant.

*Beggs & Palmer*, for Appellees.

MABRY, C. J.:

One of the pleas in this case, called a plea in abatement, alleges that the Florida Orange Hedge Fence Company was a corporation organized under the laws of Tennessee, and doing business in this State. According to the recognized American doctrine, the domicile and citizenship of a corporation are regarded as belonging to the State under whose laws the corporation is created. In the case of Bank of Augusta vs. Earle, 13 Peters, 519, it is said that "a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law, and by force of the law; and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and can not migrate to another sovereignty. But although it must live and have its being in that State only, yet it does not by any means follow that its existence there will not be recognized in other places, and its residence in one State creates no insuperable objection to its power of contracting in another. It is indeed a mere artificial being, invisible and intangible; yet it is a person, for certain purposes in contemplation of law, and has been recognized as such by the decisions of this court." And in St. Louis vs. Ferry Company, 11 Wall. 423, it is said, in reference to a corporation, that "it can exercise its franchises extra-territorially only so far as may be

permitted by the policy or comity of other sovereign-
ties.   By the consent, express or implied, of the local
government, it may transact there any business not
*ultra vires.*"  In recognition of the doctrine announced
in the case first cited it was held by this court in Tay-
lor vs. Branham & Co., 35 Fla. 297,  17 South. Rep.
552, that a corporation can have no legal existence out
of the boundaries of the sovereignty by which it is
created.   It exists only in contemplation of law, and
by force of the law; and  where that law ceases to op-
erate, the corporation can have no existence.   It must
dwell in the place of its creation, and can not migrate
to another sovereignty.   And where a number of indi-
viduals assume to act in a corporate capacity in a
State where they have not been clothed with corporate
existence and authority, they can not there be recog
nized as a legally constituted corporation, though they
may have been duly incorporated in another State,
and such persons, in the State where they assume
corporate capacity, will be treated as and held to the
responsibility of partners.   In the case just cited in
this court the record showed that there was an attempt
at an organization of a corporation in this State under
a supposed charter obtained under the general laws of
Tennessee without any organization or user in that
State.   Where a corporation has been legally created
and organized under the laws of a sister State for the
transaction of any business there, it may, by comity
existing between the States, transact business in this
State, provided it be not in contravention of our laws
or public policy.   Our general incorporating laws
recognize the transaction of business by foreign cor-
porations in this State, and in the absence of express
legislative assertion to the contrary, the courts of this

State would be bound to recognize the comity existing among the States.   While this is true, it is also well-settled that a corporation created under the laws of one State can not hold corporate meetings in another for the purpose of organizing the corporation, electing its officers or performing any strictly corporate functions in its organization.

A corporate charter was granted by the Legislature of Maine, and the corporators met in New York, accepted the charter, elected officers and a board of directors for the corporation, and it was held in Miller vs. Ewer, 27 Maine, 509, S. C. 46 Am. Dec. 619, that all votes and proceedings of persons professing to act in the capacity of corporations, when assembled without the bounds of the sovereignty granting the charter are void.   The corporators in a charter granted by the State of North Carolina met in Baltimore, Maryland, and accepted the charter, and it was held that the acceptance was invalid, and the corporation had no legal existence.   Smith vs. Silver Valley Mining Co., 64 Md. 85, 20 Atl. Rep. 1032.   After a corporation has been duly organized in the State of its creation there may be some question as to the legality of meetings of directors, or even stockholders, without the limit of the State, as to which we express no opinion; but there can be no doubt from the authorities that the first meeting to organize the corporation and elect its first officers must be within the State where it is created.   1 Beach on Private Corporations, sec. 286.

In our judgment there was no sufficient proof before the court to sustain the plea in the case before us, that the Florida Orange Hedge Fence Company was a corporation organized under the laws of Tennessee and doing business in Florida.   In the first place, the laws

of Tennessee, authorizing the formation of such a corporation as the supposed charter purports to create, were not put in evidence so far as the record shows, and we do not see that we can take judicial knowledge of the laws of another State under which a corporation is claimed to have been created. The authorities indicate that proof of such laws must be made in order that the court may see the legal warrant for the creation of such corporations. Holloway vs. Memphis, El Paso & P. R. R. Co., 23 Texas, 465, S. C. 76 Am. Dec. 68; United States Bank vs. Stearns, 15 Wend. 314; 1 Lawson's Rights, Rem. & Prac., sec. 344. Conceding that there was legal authority for obtaining the charter in question, the evidence fails to show any organization of the corporation in Tennessee, or any user under the charter in that State; but it does show, in our opinion, an attempted organization in this State under the charter. The first officers were elected here, and the only stock ever issued was in Orlando. The meeting in Tennessee can not be regarded as resulting in any corporate action to the extent of organizing a corporation under the charter. Taken in connection with what one of the corporators testified, the conclusion is, that they determined to come to Florida to carry out the methods and plans of operating the company, and the testimony shows that they did come to this State and attempted to organize by adopting a seal, electing officers and issuing stock, and although such action on their part appears to have been in good faith, under the belief that the corporation existed, it was ineffectual to accomplish any organization in law. Under the authorities referred to there can be no organization of a corporation in this State under a charter obtained in a foreign jurisdiction to do business

there. The present case does not come within the principle decided in Demarest vs. Flack, 128 N. Y. 205, 28 N. E. Rep. 645, where citizens of that State obtained in West Virginia a charter and organized under it for the purpose of doing busines in the State of New York. From the evidence produced in this case we are of the opinion that the proceedings on the part of appellees and associates in attempting to organize a corporation in this State were void, and no corporation was in fact organized.

It is contended for appellees that the Florida Orange Hedge Fence Company was, under the organization mentioned, a corporation *de facto*, and that appellant can not be permitted to question its existence; and further that he is estopped from denying its existence; because both he and his assignor recognized and dealt with the company as a corporation. Cook states, in his book on Stock and Stockholders and Corporation Law (3d ed.), sec. 233, that "there are many cases to the effect that a corporation creditor seeking to enforce the payment of his debt may ignore the existence of the corporation, and may proceed against the supposed stockholders as partners, by proving that the prescribed method of becoming incorporated was not complied with by the company in question. For instance, it has been held that where the articles of association were signed, but not filed until some time subsequently, debts contracted in the *interim* might be collected from the stockholders as partners. So, also, a total failure to file or record the certificate or articles of incorporation has been held to render the members liable as partners; as also an omission of the members to sign and publish the articles of association, or an indefinite statement of what the principle

place of business of the corporation is to be." And in sec. 234 he states that "during the past few years, however, the great weight of authority has clearly established the rule that where a supposed corporation is doing business as a *de facto* corporation, the stockholders can not be held liable as partners, although there have been irregularities, omissions or mistakes in incorporating or organizing the company. The corporation is a *de facto* corporation where there is a law authorizing such corporation and where the company has made an effort to organize under that law and is transacting business in a corporate name." The two views here expressed by this author indicate the dividing line between the decisions on the subject. The case of Snider's Sons' Co. vs. Troy, 91 Ala. 224, 8 South. Rep. 658, contains a clear statement of the diversity of judicial opinion in reference to the matter. The authorities *pro* and *con* are cited in note to the case of Rutherford vs. Hill, 22 Oregon, 218, 29 Pac. Rep. 546, and reported in 29 Am. St. Rep. 596. Conceding that the rule approved by Cook, in sec. 234, to be the correct one, we do not perceive how an association of persons can exist as a corporation *de facto* unless they can legally become a corporation *de jure*. It is stated in Snider's Sons' Co. vs. Troy, *supra*, that "a corporation *de facto* exists when from irregularity or defect in the organization or constitution, or from some omission to comply with the conditions precedent, a corporation *de jure* is not created, but there has been a colorable compliance with the requirements of some law under which an association might be lawfully incorporated for the purpose and powers assumed, and a user of the rights claimed to be conferred by the law, when there is an organization with color of law,

and the exercise of corporate franchises." The cases cited in note to Rutherford vs. Hill, *supra*, shows that when the organization of a corporation never had any appearance of validity, the participants therein will be held liable as partners. The attempted organization of the corporation in this State under the supposed Tennessee charter was wholly illegal and without any semblance of authority. There is no law in this State, nor in Tennessee, so far as we are advised, to authorize such proceeding, and the claim of the existence of the corporation *de facto* under it is without support. Neither do we see that the appellant is estopped from proceeding against appellees as partners. The fact that the note, endorsed to him before maturity, is executed by persons as president and secretary of the company does not create a presumption that it was a corporation. Clark vs. Jones, 87 Ala. 474, 6 South. Rep. 362; Holloway vs. Memphis, El Paso & P. R. R. Co., *supra*. The body of the note indicates an unusual paper for a corporate body to make, and contains no recital that the company in whose name it was executed was a corporation. There is nothing sufficient to overcome the positive testimony of appellant that he did not know the company was a corporation, or claimed to be a corporation, when he received the note, which was before its maturity; nor does it appear that he contracted with or dealt with the company as a corporation, so as to be estopped from gainsaying its existence as a corporation. The facts of the case do not bring it within the principle decided in Booske vs. Gulf Ice Co., 24 Fla. 550, 5 South. Rep. 247, and Jackson Sharp Co. vs. Holland, 14 Fla. 384, to the effect that one who contracts with

an association as a corporation and exercising corporate powers is estopped to deny it.

Objections were made to the admission of certain evidence on the part of appellees, but as the trial was before the judge, without a jury, we have not considered the objections.

On all the evidence proper in the case our conclusion is, that the judgment was wrong, and must be reversed. It is so ordered.